161 N.W.2d 324 (1968)
In re ESTATE of Jacob JEURISSEN, aka J. J. Jeurissen and Jacob J. Jeurissen.
Hildegard JEURISSEN, surviving spouse of decedent, Appellant,
v.
Mary Ann OHNSORG, et al., children of decedent, Respondents.
No. 41004.
Supreme Court of Minnesota.
August 23, 1968.
Lindmeyer & Lindmeyer, Shakopee, for appellant.
Odell & Smith, Chaska, for respondents.
Heard before KNUTSON, C. J., and NELSON, SHERAN, PETERSON, and FRANK T. GALLAGHER, JJ.

OPINION
SHERAN, Justice.
Appeal from an order of the district court denying a new trial.

Issue
The question for decision is whether the trial court was justified in upholding the validity of an antenuptial agreement executed by Hildegard Fitz and Jacob Jeurissen on January 11, 1961, in anticipation of their marriage.

Facts
Before the marriage, Hildegard Fitz, 62 years of age, was employed as a "floor lady" at the Masonic Home at Bloomington, Minnesota, where she earned approximately $135 per month. She lived in a house in Shakopee, Minnesota, worth approximately $11,000, renting out the upstairs which had been converted into a rental unit. Her first husband, Peter Fitz, died on February *325 5, 1960; there were two living children by that marriage. Jacob Jeurissen, 67, was a widower married twice previously, with five adult daughters.
Their courtship began in September 1960. On December 19, a meeting was held between Mrs. Fitz and Mr. Jeurissen which was attended by his five children. They discussed the rights of each in the property of the other upon death. Apparently this meeting was arranged by the daughters of Mr. Jeurissen and they carried the initiative in the discussion. It became so disconcerting to Mrs. Fitz that she left the gathering and went home.
Approximately a week prior to January 11, 1961, Mr. Jeurissen consulted with Attorney Eugene Wann of New Prague, Minnesota, relative to an antenuptial agreement, explaining to Mr. Wann in a general way what he wanted. On January 11 both parties appeared at the office of Mr. Wann where they discussed the property held by each, the nature of the rights of each in the property of the other in the event of marriage, and the terms of a proposed antenuptial agreement. Both parties professed not to be interested in the exact details of the other's financial affairs.
At the conclusion of the conference, the antenuptial agreement was prepared and executed by the parties. It provides that each waives rights in the property of the other in the event of their marriage and the subsequent death of one of them. A duplicate original of the agreement was provided to each of the parties and each preserved it.
At the time of his death Mr. Jeurissen's assets approximated $46,000, including the homestead valued at $14,000. Appellant's assets consisted of her home, valued at approximately $12,000, producing an income ranging from $30 to $50 per month. Later she became entitled to social security benefits approximating $75 per month.
The antenuptial agreement gave Mrs. Jeurissen, should she be the survivor, the home at 214 W. Fourth Street, Shakopee, Minnesota, so long as she remains unmarried and resides in the dwelling, and a 1961 2-door Dodge automobile.
Following the wedding, Jacob Jeurissen and Hildegard Jeurissen lived together as husband and wife in his house at Shakopee until his death on July 12, 1965. At her husband's request, Hildegard Jeurissen discontinued her work at the Masonic Home at Bloomington, and their relationship during the 4½ years of the marriage was apparently congenial.
If the antenuptial agreement had not been signed, the widow would have been entitled to receive:
(1) Support and maintenance during the probate of the estate for a period not to exceed 18 months (Minn.St. 525.15 [4]).
(2) Furniture and household goods not to exceed $2,000 in value; and personal property worth up to $1,000 (Minn.St. 525.15 [1]).
(3) A life estate in the homestead (Minn.St. 525.145 [1] [b]).
(4) One-third of all other property, real or personal (Minn.St. 525.16 [1, 2]).

Decision
The evidence disclosed by the record is adequate to sustain the determination made by the trial court.
The applicable rules of law were set out most recently in Gartner v. Gartner, 246 Minn. 319, 323, 74 N.W.2d 809, 812, where this court said:
"* * * Antenuptial contracts in anticipation of marriage, fixing the rights which the survivor shall have in the property of the other after his or her death, are not against public policy but are regarded with favor as conducive to the welfare of the parties making them, and these contracts will be sustained whenever equitably and fairly made."
*326 There was evidence introduced in behalf of appellant which would tend to support a finding that she did not fully understand the relationship between (a) her position under the terms of the antenuptial agreement, and (b) her position as it would have been had the agreement of January 11, 1961, not been signed. The attorney who prepared the antenuptial agreement had no personal knowledge of the financial background of the parties to it. It is probable that his explanation of the rights of each in the property of the other under the antenuptial agreement and their rights without it was in general terms. It is possible that Mrs. Jeurissen had difficulty in applying an explanation in general terms to the specifics of her situation. There is evidence indicating that during the years which intervened between the marriage and the death of her husband she did not fully understand the limitations upon her rights which result if the agreement is a binding one.
But, in our judgment, this evidence, though persuasive, is not sufficiently strong to justify rejection of the findings and conclusions made by the trial judge who had the opportunity of evaluating the evidence as it developed in the courtroom. The agreement is not inherently inequitable as a matter of law. At the time it was executed, Mrs. Hildegard Fitz was, it appears, a reasonably intelligent and experienced person even though her formal education was not extensive. She had some limited income of her own and a house which, by the terms of the agreement, was freed from such interest as Jacob Jeurissen would have in it had she died before he did. And although Mrs. Jeurissen may have resented the actions in support of a property arrangement taken by some of the adult children of the widower she married, she probably recognized and respected a disposition on the part of her husband, 67 at the time of the marriage, to preserve the bulk of his estate for their benefit. It seems that at the time of the meeting in the office of the attorney who prepared the antenuptial agreement, both of the parties who executed it were less interested in acquiring the property owned by the other than they were in preserving for their respective children the property they owned themselves.
Because we do not feel that as a matter of law the record justifies a reversal of the determination made by the trial court, we affirm.
Affirmed.