**Ronald L. POSER, Respondent,**

**v.**

**Robert C. ABEL and Peter S. Bugbee, individually, and together as partners d/b/a Physicians & Surgeons Bldg., Appellants.**

No. C4–93–938.

Court of Appeals of Minnesota.

Jan. 4, 1994.

Review Denied Feb. 24, 1994.

Norman B. Kemper, Kemper Law Offices, St. Cloud, for appellants.

Richard P. Pearson, Schmidt & Lund, St. Cloud, for respondent.

Considered and decided by KLAPHAKE, P.J., and PETERSON and HARTEN, JJ.

## OPINION

PETERSON, Judge.

On appeal from a judgment for respondent, Ronald Poser, appellants Robert Abel and Peter Bugbee claim the trial court erred in finding Poser was entitled to a commission on the sale of their building when the writing describing the commission arrangement did not comply with the written agreement requirement in Minn.Stat. § 82.33, subd. 2 (1988). We affirm because the written commission document, when read with another document executed at the same time, satisfied the written agreement requirement in Minn.Stat. § 82.33, subd. 2.

## FACTS

Respondent Ronald Poser, a real estate broker, sued appellants Robert Abel, Peter Bugbee, and their partnership for a commission for the sale of their office building. At trial, Poser testified that in January 1990, Bugbee asked him to sell the P & S building. Poser and Bugbee discussed a $45,000 to $50,000 commission based on the building's

one million dollar selling price but did not execute any written agreement.

In mid-February 1990, Poser brought Bugbee an offer to buy the building for $850,000 in cash. Poser then learned for the first time that Bugbee had a silent partner, Abel, who would have to approve the deal. Abel and Bugbee told Poser that the cash offer was unacceptable for tax reasons and that his proposed commission was too high. After brief negotiations, the parties agreed Poser would receive a $35,000 commission. Bugbee and Abel offered to pay Poser $27,500 of this commission in cash. Poser then asked Bugbee and Abel to sign a listing agreement for the P & S building, but they refused. After Poser insisted that the commission agreement be reduced to a writing, Bugbee and Abel executed a document that read:

2–15–90

Commission—on P & S Bldg–Agreement—At closing by Check $7,500.00 Cash—Non Reported—$27,500.00

   R.C. Abel

   Peter S. Bugbee

Bugbee and Abel also executed a written counteroffer for the sale of the building. The counteroffer provided that Poser was representing Abel and Bugbee in the sale of the building and that he would be paid a $7,500 fee at closing.

Poser took the counteroffer to the buyers who made changes on the face of the document. Abel and Bugbee accepted the buyers' changes and the parties to the sale signed the "marked up" counteroffer. The terms discussing Poser's representation of Bugbee and Abel and his $7,500 fee were not changed. Poser prepared a "cleaned up" copy of the agreement, which all the parties signed. Poser later agreed to credit $10,000 of his commission to the broker representing the buyers.

After the closing, Abel and Bugbee refused to pay Poser his commission. Poser sued appellants for $25,000, the promised $35,000 commission less the $10,000 credited to the buyers' broker. Poser later reduced his claim to $15,000 after Abel gave him $10,000 in cash.

Bugbee and Abel both testified that the February 15, 1990, commission document was not an agreement with Poser. The partners said that this document was an agreement between them regarding the total commission that they would pay on the sale of the building. Bugbee testified that the $7,500 term in the counteroffer was their only agreement with Poser about his commission. Abel said he paid Poser $10,000 instead of $7,500 because he owed him money for another deal.

The trial court found that Abel and Bugbee agreed to pay Poser a $35,000 commission, $7,500 of which would be paid by check at closing and $27,500 to be paid in cash. The court found that Abel and Bugbee prepared the February 15, 1990, commission document because the counteroffer only listed $7,500 of his commission and Poser insisted on written confirmation of the entire commission agreement. The court found that this document was a valid and enforceable agreement between the parties. The court found that Poser performed his part of the bargain by finding a buyer, and that he was entitled to $15,000, the $35,000 commission less the $10,000 already paid to him and the $10,000 credited to the buyers' broker.

## ISSUE

■■ Was the February 15, 1990, commission document an agreement that satisfied the requirements of Minn.Stat. § 82.33, subd. 2 (1988)?

## ANALYSIS

On appeal from a judgment, this court's scope of review is limited to deciding whether the [district] court's findings are clearly erroneous and whether it erred in its legal conclusions. When the [district] court's findings are reasonably supported by the evidence, they are not clearly erroneous and must be affirmed. *Citizens State Bank v. Leth,* 450 N.W.2d 923, 925 (Minn.App.1990) (citations omitted). This court need give no deference to a district court's decision regarding a question of law. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984).

■ Bugbee and Abel argue that Poser cannot sue them for any commission because the February 15, 1990, commission document does not satisfy the written agreement requirement of Minn.Stat. § 82.33, subd. 2 (1988).[1] Minn.Stat. § 82.33, subd. 2 provides a real estate broker cannot

> bring or maintain any action in the courts for any commission, fee or other compensation with respect to the purchase, sale, lease or other disposition or conveyance of real property * * * unless there is a written agreement with the person bringing or maintaining the action.

Although it is not explicitly stated in the statute, the term "written agreement" must refer to a written agreement to pay a commission, fee or other compensation.

■ Bugbee and Abel first claim that the commission document does not satisfy Minn. Stat. § 82.33, subd. 2 because it was not an agreement with Poser. They argue the district court erred in disregarding their testimony that the commission document was only an agreement between them. "If in dispute, the existence and terms of a contract are questions for the fact finder." *Morrisette v. Harrison Int'l Corp.*, 486 N.W.2d 424, 427 (Minn.1992). Here, Poser testified that Bugbee and Abel agreed to pay him a $35,-000 commission on the sale of the P & S building and that the February 15, 1990, commission document embodied his agreement with them. The district court was entitled to believe Poser's testimony over that of Abel and Bugbee. Since evidence in the record supports the court's finding that the commission document was an agreement between appellants and Poser that Poser would receive a $35,000 commission, we will not disturb this finding.

■ Bugbee and Abel next maintain that the February 15, 1990, commission document is not a valid "written agreement" because it is missing an essential term, the name of the party who is to receive the commission. To be enforceable, a

> "memorandum must set forth all the essential terms of the agreement so that it may be proved on the basis of such memorandum without resort to parol evidence."

*In re Petroleum Carriers Co.*, 121 F.Supp. 520, 523 (D.Minn.1954).[2] The identity of the parties to the agreement is an essential term. *Clampet v. Bells*, 39 Minn. 272, 274, 39 N.W. 495, 496 (1888); *see also Staples v. Miller*, 319 N.W.2d 57, 59–60 (Minn.1982) (written agreement must identify parties to satisfy statute of frauds). Here, the commission document does not identify the person who is to receive the commission.

■ But "[d]ocuments executed at the same time pertaining to the same transaction are to be considered together." *Carlson v. Estes*, 458 N.W.2d 123, 127 (Minn.App.1990); *see also Anderson v. Kammeier*, 262 N.W.2d 366, 370 n. 2 (Minn.1977) (contracts in several writings relating to same transaction will be construed with reference to each other). Parol evidence may be considered "to explain the circumstances surrounding the execution of the documents." *Anderson*, 262 N.W.2d at 370 n. 2; *see also Doyle v. Wohlrabe*, 243 Minn. 107, 113, 66 N.W.2d 757, 762 (1954) (parol evidence explaining time, place, parties, and other circumstances may be received to aid in interpreting contract terms); 2 Arthur L. Corbin, Corbin on Contracts § 515 (1950) (oral testimony admissible to explain relationship between memoranda).

Here, the February 15, 1990, commission document may be read with the counteroffer because the documents were executed at the

1. Bugbee and Abel initially argued that Poser could not sue them because the commission document was not a written listing agreement. Minn.Stat. § 82.33, subd. 2 (1984) required a written listing agreement as a prerequisite to a commission lawsuit. But the statute was amended in 1986. 1986 Minn.Laws ch. 358, § 15. Minn.Stat. § 82.33, subd. 2 (1988) does not require a written listing agreement as a prerequisite to a commission action.

2. Minn.Stat. § 82.33, subd. 2 does not state which terms must be included in the written agreement to satisfy the statute. *See, e.g.*, Minn. Stat. § 513.33, subd. 2 (1992) (written credit agreement must contain expression of consideration, signatures of borrower and lender and other relevant terms to be enforceable). However, cases discussing the statute of frauds and similar statutes are instructive as to the terms that must be included in a written agreement to satisfy this type of statute.

same time and refer to the same transaction, the sale of the P & S building. Poser's testimony was admissible to explain the relationship between the two documents and the circumstances of their execution.

When the commission document and the counteroffer are construed together, they provide all of the essential terms of the agreement. The commission document supplies the name of the building, the amount and method of payment of the commission, and two of the parties' names. The counteroffer identifies Poser as Abel's and Bugbee's agent in the sale of the P & S building and reports the $7,500 portion of their commission arrangement. Poser explained that the commission document represented the parties' entire commission agreement and that the $7,500 term in the counteroffer was only the reported part of the commission. Thus, Poser's testimony did not add any terms to the commission agreement, it merely explained the relationship between the documents and helped the court to interpret the parties' agreement.

Bugbee and Abel next argue that the February 15, 1990, commission document lacked mutuality because Poser did not sign the document. The party seeking to enforce a writing need not have signed the document if he agreed to and has acted in conformity with the contract. *Taylor v. More*, 195 Minn. 448, 452, 263 N.W. 537, 539 (1935). Poser admitted at trial that he agreed to accept a reduced commission of $35,000. Further, Poser acted upon this contract by finding a buyer for the office building. Given this evidence, the district court properly found the agreement bound both parties.

Finally, Bugbee and Abel argue that Poser's subsequent actions show he agreed to accept a $7,500 commission. While a written contract may be modified by the parties' subsequent conduct, whether such a modification occurred is a question for the factfinder. *Wormsbecker v. Donovan Constr. Co.*, 247 Minn. 32, 41, 76 N.W.2d 643, 649–50 (1956). In this case, the only modification found by the district court was Poser's promise to credit $10,000 of his $35,000 commission to the buyer's broker. As evidence in the record supports the court's conclusion

that this was the only modification of the $35,000 commission agreement, this finding is not clearly erroneous and will not be disturbed.

## DECISION

The trial court's finding that the February 15, 1990, commission document represented the parties' agreement that Abel and Bugbee would pay Poser a $35,000 commission on the sale of the office building was not clearly erroneous. As the commission document and the counteroffer construed together contain all of the essential terms of the parties' agreement, the parties' commission arrangement satisfied the written agreement requirement in Minn.Stat. § 82.33, subd. 2 (1988).

**Affirmed.**