**Jean POLLOCK–HALVARSON, Appellant,**

v.

**Douglas F. McGUIRE, et al., Respondents.**

No. C3–97–1720.

Court of Appeals of Minnesota.

March 31, 1998.

Review Denied May 28, 1998.

Patrick William Michenfelder, Minneapolis, for appellant.

John Robert Thomas, Minneapolis, for respondent.

Considered and decided by HUSPENI, P.J., and SCHUMACHER and SHUMAKER, JJ.

## OPINION

SHUMAKER, Judge.

Appellant and her husband entered into an antenuptial agreement. After her husband died, appellant challenged the validity of the agreement and petitioned the probate division of the district court for an award of her elective share of her husband's estate. Adopting a referee's findings and conclusions, the court upheld the agreement and denied the petition. Appellant hired the respondent-lawyers to appeal. They failed to perfect the appeal. Appellant sued them, alleging professional negligence, and they moved for summary judgment. The district court granted summary judgment and dismissed the lawsuit. Appellant appealed. We affirm.

## FACTS

Appellant, Jean Pollock–Halvarson, is the surviving spouse of Julius Norman Halvarson. They attended school together, went their separate ways, married others, raised families, and met again many years later at a class reunion. They dated and eventually appellant moved into decedent's home. About six years later, they decided to marry. Decedent obtained a marriage license on January 12, 1988, but the parties did not immediately set a wedding date.

On January 15, 1988, appellant and a girlfriend went on a vacation cruise. Early in the trip, appellant suffered a heart attack and was hospitalized and unable to return to Minnesota for nearly a month. When she returned she realized that her poor health would preclude her from resuming her employment of 45 years as a personal banking officer.

Decedent had been laid off his own job and was receiving unemployment compensation. His health was precarious and he suggested that he and appellant marry soon so that he could be added to her medical insurance coverage before she terminated her employment. She agreed.

The parties located a judge to perform the wedding and set the date for February 20, 1988. Within the week prior to that date, decedent said that he wanted an antenuptial agreement. He did not explain his reasons, but appellant did not object because she trusted him completely and believed him to be the most honest person she had ever met.

The parties obtained a form contract. From that form appellant typed the agreement that she and her husband would sign the day before their wedding. The agreement noted that the parties expected to be married and mutually desired "to fix and determine their rights and obligations which will arise upon the death of either or both of them." Each warranted and represented that each "has disclosed to the other all of the assets, property and estate which he now owns or to which he may be entitled and has disclosed his means and resources, including current income." The parties also acknowledged having been informed of their legal rights to each other's property upon death and each expressly waived and relinquished all rights in the other's property. Further, they included a provision that "[e]ach party expressly waives the surviving spouse's award to which they might otherwise be entitled by reason of their marriage and subsequent death of either party." Finally, each acknowledged

> that she and he has had the advice of independent counsel with respect to this Agreement and is entering into this Agreement freely, voluntarily and with full knowledge of its legal effect.

The acknowledgment to the agreement provides in part that appellant and decedent appeared in person before the notary and acknowledged that

> they have each read and fully understand the effect of the foregoing Agreement; that each knows the approximate value and extent of the personal and real property

owned by the other, as well as the annual income of each party; that each knows the approximate·share of property which each would take upon the death of the other if this Agreement were not entered into; and that the parties have signed, sealed and delivered the foregoing Agreement as their free and voluntary act.

The decedent attached to the agreement a handwritten exhibit listing as his assets his home; all household items except certain described items belonging to appellant; an automobile; an·airplane; checking. and savings accounts; IRA's; stocks; and the contents of a safe deposit box. For most of the assets decedent also gave values. Appellant made no written disclosure of her assets.

The parties executed the agreement on February 19, 1988 before an apparent notary public and one other person, both of whom signed the agreement. Neither party sought independent legal advice before signing the agreement. Appellant chose to trust decedent and "to do anything he wanted." The person who signed as the notary apparently was not commissioned. ·She did, however, hold herself out as a notary public and her notarial stamp affixed to the agreement identified her as such and showed her commission to be valid until March 12, 1991.

In 1991, the parties hired a lawyer to prepare wills and trusts for them. This was a lawyer appellant had known from the trust department at the bank where she had worked. Appellant's will and trust provided for her property to pass to her son and not to decedent. Decedent's will and trust did likewise with respect to his. children and his will incorporated the antenuptial agreement.

When decedent died, appellant sought to obtain her elective share of his estate in probate. She claimed that the antenuptial agreement was invalid because it did not disclose all of decedent's assets; it did not disclose any of her assets; the notary was not licensed; there was only one witness to the agreement; she did not have a meaningful opportunity to obtain independent legal advice; and she had no notion of what her rights were.

After an evidentiary hearing, a probate division referee found that the parties intended the antenuptial agreement to be binding; there was no procedural or substantive unfairness; and decedent relied on the antenuptial agreement when he made his will. The referee upheld the agreement. A district judge adopted the referee's findings and conclusions. This lawsuit followed and another district judge granted summary judgment on the ground that an appellate court would affirm the referee's findings and conclusions.

## ISSUES

1. Did the parties' antenuptial agreement satisfy the substantive and procedural fairness requirements of Minn.Stat. § 519.11 (1996)?

2. Did the parties' antenuptial agreement sufficiently comply with the form requirements of Minn.Stat. § 519.11 (1996)?

## ANALYSIS

■ In reviewing a grant of summary judgment, we must determine whether any genuine issue of material fact exists and whether the trial court erred in applying the law. *Offerdahl v. University of Minnesota Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). Since this is an attorney negligence action, we must also consider in our review the so-called case-within-a-case. *Rouse. v. Dunkley & Bennett, P.A.*, 520 N.W.2d 406, 409 (Minn.1994). An essential element in an attorney negligence action is a showing that but for the defendant's deficient conduct the plaintiff would have succeeded in the underlying action. *Id.* The district court ruled that, as a matter of law, appellant would not have succeeded because the antenuptial agreement was valid. Appellant concedes that there are no facts in dispute. We thus consider only whether or not the trial court erred in its application of law. The dispositive legal issue is whether or not the antenuptial agreement is valid. We review legal issues de novo. *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn.1989).

■ Various core principles underlie the dispositive issue. The first concerns the

sanctity of the freedom to make contracts. People have a right to make legal contracts and to expect the courts to honor and give binding effect to their agreements. *See Cady v. Bush,* 283 Minn. 105, 110, 166 N.W.2d 358, 362 (1969). So important and unfettered is the right to contract that courts have no authority to invalidate unwise or improvident agreements or to rewrite them so as to achieve a fairer bargain for one party or another. *Id.* In enforcing legal contracts, the courts' paramount focus is the parties' intent. *Id.*

■ An antenuptial agreement is a type of contract recognized and favored at common law. *Hill v. Hill,* 356 N.W.2d 49, 53 (Minn. App.1984). It is an agreement that may properly fix and determine a party's rights in the property of another upon death. *Id.* Minn.Stat. § 519.11 is, with some modification, a codification of Minnesota's common law governing antenuptial agreements. *Id.* As at common law, a statutorily valid antenuptial agreement must satisfy the requirements of procedural and substantive fairness. *McKee–Johnson v. Johnson,* 444 N.W.2d 259, 265 (Minn.1989). A form of the contract is also prescribed. In relevant part, Minn.Stat. § 519.11 (1996) provides:

A man and woman of legal age may enter into an antenuptial contract or settlement prior to solemnization of marriage which shall be valid and enforceable if (a) there is a full and fair disclosure of the earnings and property of each party, and (b) the parties have had an opportunity to consult with legal counsel of their own choice.

Minn.Stat. § 519.11, subd. 1 (1996).

Antenuptial or postnuptial contracts or settlements shall be in writing, executed in the presence of two witnesses and acknowledged by the parties, executing the same before any officer or person authorized to administer an oath under the laws of this state. An antenuptial contract must be entered into and executed prior to the day of solemnization of marriage. A power of attorney may not be used to accomplish the purposes of this section.

*Id.,* subd. 2 (1996).

An antenuptial or postnuptial contract or settlement duly acknowledged and attested shall be prima facie proof of the matters acknowledged therein and as to those matters, the burden of proof shall be and rest upon the person contesting the same.

*Id.,* subd. 5 (1996).

■ This statute did not alter the common law rules of procedural and substantive fairness. *McKee–Johnson,* 444 N.W.2d at 265. Rather, its purpose was to codify the procedural fairness requirements. *Id.* at 264. It also shifted the burden of proof from the proponent, as it was in common law, to the contestant. *Id.* at 265. An agreement acknowledged and attested is prima facie proof of its contents and the contestant has the burden of proof of demonstrating the invalidity of the agreement. Minn.Stat. § 519.11, subd. 5 (1996). Ostensibly, the agreement in question had been acknowledged and attested in conformity with the statute. Therefore, the appellant had the burden of proof.

■ Appellant does not appear expressly to challenge the substantive fairness of the agreement, but we infer such a challenge from her contention that she is entitled to her elective share of decedent's estate under the probate laws. Substantive fairness guards against misrepresentation, overreaching and unconscionability. Appellant does not allege any of those evils. Under the agreement she receives no portion of the decedent's property, other than what he might have left her by his will. It is this result that she challenges. No case has held that mere disparity between the property division under an antenuptial agreement and that available under probate laws is sufficient to render the agreement substantively unfair. *See McKee–Johnson,* 444 N.W.2d at 267. The supreme court has provided clear guidance for the substantive fairness analysis:

[a] premarital agreement need not approximate a division suggested by property division statutes in * * * the probate court code * * * in order to meet the requirement of substantive fairness. Indeed, one of the goals, if not the primary purpose, of an antenuptial agreement is to alter state-prescribed property rights which would otherwise arise * * *. If the parties to a

premarital agreement are limited to state provided property divisions, they would be deprived of their right to contract or to divide their property as they wish.

*McKee–Johnson,* 444 N.W.2d at 268, n. 8.

The supreme court further held

* * * because a substantive fairness review intrudes upon the right of mature adults to freely contract with respect to the allocation of property and other rights, courts which have employed a substantive fairness review * * * have usually limited invalidation of contract provision to those which could not have reasonably been foreseen, and which have become so one-sided as to be oppressive or unconscionable.

*Id.* at 267.

The agreement did alter appellant's statutory rights but the alteration was fully foreseeable because of the terms of the document and the subsequent wills and trusts that had the same result. Moreover, the parties' clear contractual intent is evinced by the fact that the antenuptial agreement and the wills and trusts dispose of the parties' respective property in the same manner. Appellant has not shown any substantive unfairness.

Procedural fairness is satisfied in an antenuptial agreement if (a) the parties have made full and fair financial disclosures to each other, and (b) each has had an opportunity to obtain independent legal advice respecting the agreement. Minn.Stat. § 519.11, subd. 1 (1996). Appellant contends that neither requirement was satisfied.

■ The exhibit attached to the agreement did not disclose decedent's earnings or his accidental death and VA policies. Nor did it disclose appellant's assets, except for some household items. It also omitted an itemization of decedent's household goods, referring to them instead as "all household items." Appellant's contentions raise questions as to the form and the extent of the requisite disclosure.

■ The statute prescribes no particular form of disclosure. Minn.Stat. § 519.11, subd. 1 (1996). Although it is perhaps prudent to make the disclosure in writing, that form is not necessary to the validity of the

agreement. *See McKee–Johnson,* 444 N.W.2d at 265. In *Hill,* the wife's general knowledge of the husband's financial condition coupled with her willingness to sign the agreement "whether he had two million dollars or two hundred dollars" was held to satisfy the disclosure requirement. *Hill,* 356 N.W.2d at 52. There the wife knew only that her husband was wealthy and that his net worth was between $300,000 and $400,-000. *Id.* He had shown to her several of his properties but he never made a comprehensive and particularized disclosure of assets and values. *Id.*

In this case, appellant knew that decedent was not working and that his earnings consisted of unemployment compensation. Having lived in decedent's home for six years before the marriage she knew what furniture in the home belonged to decedent. As in *Hill,* appellant had general firsthand knowledge as to some of decedent's assets and a written, specific list of nearly all of his other assets. Like the spouse in *Hill,* who would have signed the agreement no matter what the assets were, appellant signed the agreement "[b]ecause I trusted Norman and * * * anything he said I was going to go along with, and I believed in him." Furthermore, appellant admitted that when she signed the agreement she had a reasonably good idea of the decedent's property.

As to appellant's assets, decedent knew she had a home that she owned jointly with her son, an automobile, and at least those items of household goods listed on the exhibit. Appellant produced no evidence to show what assets decedent did not know of.

The statute requires a "full and fair disclosure." Minn.Stat. § 519.11, subd. 1 (1996). No case has held that the term "full" means literally every item of tangible or intangible property that a party has an ownership interest in. Such an interpretation would impose on contracting parties an intolerable burden and would foster the defeasibility of the contract for the most trivial omission. The legislature could not have intended such an unreasonable interpretation. *Wichelman v. Messner,* 250 Minn. 88, 99, 83 N.W.2d 800, 811 (1957).

■ The only omissions from decedent's disclosure were an accidental death insurance policy and a VA policy. There is no evidence as to the values of either, what the "VA policy" was, who the beneficiaries were, what decedent's ownership interests were, or whether the omissions were good faith oversights. If there has been a less than perfect disclosure, we must look to the nature and circumstances of the deficiency to determine the significance of the omission. *See Hill*, 356 N.W.2d 49 (Minn.App.1984). In *Hill*, the disclosure of net worth represented only half of the husband's true net worth. *Id.* at 53. This court held that the discrepancy resulted from the explosive growth in the real estate market and was a good faith error by the husband. *Id.*

Because of the lack of evidence as to the omitted policies, appellant has failed to show that their omission gave her a significantly deflated view of decedent's financial condition. She has also failed to show that the omissions were knowing concealments rather than good faith oversights. Appellant has failed to prove that either the form or the extent of decedent's assets disclosure violated the procedural fairness requirement of the antenuptial agreement.

■ Appellant argues that she did not have an opportunity to obtain independent legal advice before signing the agreement. Decedent stated his desire for an antenuptial agreement some time during the week preceding the wedding. Either appellant or decedent obtained a printed form antenuptial agreement. The parties did not sign that form; rather, appellant typed a new agreement using the form as a guide. Appellant typed, and necessarily read, language that stated the parties were waiving their respective rights to each other's property on death and that indicated each had received the "advice of independent counsel" regarding the agreement. Despite this language and despite being friends with a lawyer from her workplace whom she might have consulted, appellant did not seek legal advice before signing the agreement. Although appellant perhaps did not know her elective share rights when she signed the agreement, she was aware of decedent's desire to give his property to his children and she freely and voluntarily acceded to that desire. She has not shown that she was pressured into signing the agreement, that she was in any way prevented from seeking legal advice, or that decedent concealed any rights from her. Under such circumstances she must be deemed to have waived her right to independent advice. *See In re Estate of Jeurissen*, 281 Minn. 240, 161 N.W.2d 324 (1968), and *Hafner v. Hafner*, 295 N.W.2d 567 (Minn. 1980).

■ Appellant's final contention is that the form of the agreement was defective and therefore invalid. She notes that Minn.Stat. § 519.11, subd. 2 (1996), requires that the agreement be

> [e]xecuted in the presence of two witnesses and acknowledged by the parties, executing the same before any officer or person authorized to administer an oath under the laws of this state.

Two persons, in addition to the parties, signed the agreement, one as a notary public and the other as an ordinary witness. Appellant contends that the statute requires two witnesses in addition to the notary, and that, in any event, the person who signed as the notary was not commissioned.

There is evidence that the person who signed as the notary might not have been commissioned. To all appearances, however, she was a notary public. She held herself out to be a notary, signed the agreement as such, and affixed a notarial stamp identifying her as a notary with a current commission. There is no evidence that the parties knew or should have known that she was not commissioned. We find the situation reasonably analogous to the predicament addressed by Minn.Stat. § 517.16 (1996) in which an unauthorized person solemnizes a marriage. The marriage is not invalid as long as the parties consummate it with the belief that the official was authorized to solemnize marriages. Minn.Stat. § 517.16 (1996). We see no justification in the law for invalidating an intended and otherwise legal antenuptial contract merely because the notary is not commissioned as long as the parties acted in good faith and reasonably relied on the appearance that the notary was commissioned.

Minn.Stat. § 519.11, subd. 2 (1996), does not distinguish the person taking the acknowledgment from the witnesses. A notary public is entitled to perform notarial acts. Minn.Stat. § 358.41(1) (1996). Notarial acts include "witnessing or attesting a signature." *Id.* The statute in question does not clearly preclude the notary public from also serving as a witness. Minn.Stat. § 519.11, subd. 2. Recognizing that to read such a preclusion into the statute will result in the defeat of the agreement and the subversion of the clearly expressed mutual intent of the appellant and decedent, we decline to do so.

### DECISION

The trial court correctly applied the law to the uncontroverted facts.

**Affirmed.**