**KAUFFMAN STEWART, INC., Respondent,**

v.

**WEINBRENNER SHOE COMPANY, INC., a Wisconsin corporation, Appellant.**

**No. CX–98–1501.**

Court of Appeals of Minnesota.

March 2, 1999.

Michael L. Puklich, Paul W. Chamberlain, Chamberlain & Neaton, P.L.L.P., Wayzata, MN (for respondent)

Daniel A. Haws, Murnane, Conlin, White & Brandt, St. Paul, MN (for appellant)

Colleen D. Ball, Reinhart, Boerner, Van Deuren, Norris & Rieselbach, s.c., Milwaukee, WI (for appellant)

Considered and decided by DAVIES, Presiding Judge, PETERSON, Judge, and HALBROOKS, Judge.

## O P I N I O N

DAVIES, Judge.

Appellant argues that the termination provision of its "Agency/Advertiser Agreement" with respondent is ambiguous, illegal, and unconscionable. We conclude that appellant's agreement to pay a preset amount to respondent in the event of voluntary termination of their contract is enforceable, and we affirm.

## FACTS

In April 1994, appellant Weinbrenner Shoe Company, Inc., signed an "Agency/Advertiser Agreement" with respondent Kauffman Stewart, Inc., an advertising agency. In the agreement, appellant agreed to pay respondent a $15,000 "monthly retainer fee" for its services. The parties also agreed that either could terminate the agreement on 60 days' written notice, but that:

> In the event this Agreement is terminated, Agency will be entitled to fee payments during the 60–day notice period or actual agency time expended on Advertiser's behalf, whichever is higher.

On August 31, 1994, appellant terminated the agreement, notifying respondent that it was dissatisfied with respondent's services. When appellant refused to pay $30,000 for the September and October 1994 agency fees, respondent filed suit alleging breach of the above provision. Appellant cross-claimed for breach.

When appellant moved for summary judgment, the district court ruled that the provision was not ambiguous, illegal, or coercive, and concluded that respondent, unless it had breached, was entitled to $15,000 per month for the 60–days following its notice of termination. But the court, noting the pending claim of breach, did not order entry of judgment. Both parties then dismissed all claims of breach and stipulated to entry of judgment in favor of respondent, allowing appellant to pursue this appeal.

## ISSUE

Is the termination provision of the parties' "Agency/Advertiser Agreement" ambiguous, illegal, or unconscionable?

## ANALYSIS

Construction of a contract is a question of law. *Turner v. Alpha Phi Sorority House,* 276 N.W.2d 63, 66 (Minn.1979). "Whether a contract is ambiguous is a legal determination." *Blattner v. Forster,* 322 N.W.2d 319, 321 (Minn.1982). Questions of law are reviewed de novo by the appellate court. *Jadwin v. Minneapolis Star & Tribune Co.,* 367 N.W.2d 476, 483 (Minn.1985). While we do not defer to the trial court's interpretation of the law concerning unconscionability, we accept factual findings that are not clearly erroneous. *In re Estate of Hoffbeck,* 415 N.W.2d 447, 449 (Minn.App. 1987), *review denied* (Minn. Jan. 28, 1988).

### A. Ambiguity

"A contract is ambiguous if it is *reasonably* susceptible to more than one interpretation." *Modern Heating and Air Conditioning, Inc. v. Loop Belden Porter,* 493 N.W.2d 296, 301 (Minn.App.1992) (emphasis in original). Contract terms are read in the context of the entire contract. *Employers Mut. Liab. Ins. Co. v. Eagles Lodge,*

282 Minn. 477, 479, 165 N.W.2d 554, 556 (1969).

Appellant argues that the agreement is ambiguous because the term "fee payments," as used in the termination provision, is not used elsewhere in the agreement and may not necessarily refer to the $15,000 "monthly retainer fee." We find this unconvincing. Words or phrases found in a contract should not be interpreted out of context, but rather by

> a process of synthesis in which the words and phrases are given a meaning in accordance with the obvious purpose of the * * * contract as a whole.

*Cement, Sand & Gravel Co. v. Agricultural Ins. Co.*, 225 Minn. 211, 216, 30 N.W.2d 341, 345 (1947).

We conclude that, in context, the terms "fee payment" and "monthly retainer fee" have the same meaning. The agreement references "fees" only in those phrases. We are convinced that, despite the slight difference in terminology, the proper reading of the contract is that the parties intended that appellant would pay respondent the regular monthly retainer fee during the 60–day termination notice period.

Appellant argues that the termination provision is ambiguous because it might also mean fees expended during the duration of the agreement. But without adding the phrase "during the duration of the agreement," appellant's alternative reading is untenable. It is improper to go beyond the actual language of the contract where the wording is clear. *Telex Corp. v. Data Prods. Corp.*, 271 Minn. 288, 295, 135 N.W.2d 681, 686–87 (1965). As written, the parties' agreement is not ambiguous.

## B. Illegality

Appellant argues that the termination provision is an illegal "penalty" clause. Appellant notes that the provision is not a valid "liquidated damages" clause because it does not operate in the event of breach. *See St. Jude Med., Inc. v. Medtronic, Inc.*, 536 N.W.2d 24, 28 (Minn.App.1995) (liquidated damages analysis inappropriate if no breach), *review denied* (Minn. Oct. 27, 1995). But the termination provision is not illegal merely because it is *not* a valid liquidated damages clause. This provision is not a penalty clause at all; rather, it is a termination fee. Parties to a contract may freely agree to a termination fee like the one at issue here. *See, e.g., id.* at 28–29 (likening legitimate termination fee to alternative performance contract, and distinguishing termination fee from liquidated damages clause because latter operates only in event of breach). While the termination fee approved of in *St. Jude Medical* was not contained in a service contract, as is the case here, the operative principle is that parties to a contract may legitimately agree to pay a preset amount in the event of voluntary termination. For this reason, the agreement's termination provision is not illegal.

## C. Unconscionability

Appellant argues that the agreement's termination provision is unconscionable.

> A contract is unconscionable if it is "such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other."

*Hoffbeck*, 415 N.W.2d at 449 (quoting *Hume v. United States*, 132 U.S. 406, 415, 10 S.Ct. 134, 137, 33 L.Ed. 393 (1889)). If a court determines that a contract contains an unconscionable clause, it may refuse to enforce the contract, enforce it without the offending language, or limit application of the unconscionable clause "to avoid any unconscionable result." Restatement (Second) of Contracts § 208 (1981).

Appellant first argues that the termination provision is unconscionable because it imposes a fee for *any* termination, regardless of cause. We disagree. The clear language of the contract indicates that the termination fee is incurred only upon *voluntary* termination; it is not applicable to breach.

Appellant next argues that the termination provision is unconscionable because it costs the terminating party the same amount regardless of the actual duration of the parties' business relationship. This argu-

ment is unconvincing. Even if the contract had been canceled one day after its signing, the parties exchanged something of value: appellant had access to respondent's services during the 60–day termination notice period (even if it chose not to use those services), and respondent was guaranteed a minimum income during that period in consideration of its commitment to serve appellant. By agreeing to pay a minimum agency fee during the termination notice period, appellant essentially agreed to protect respondent against loss of revenue for a 60–day period during which respondent could seek replacement business, including new clients who competed with appellant. There is nothing unconscionable in such an arrangement.

 Appellant next argues that the termination provision is unconscionable because, in the event of termination, it essentially "forces" appellant either to pay the agreed-upon termination fee or to purchase an equivalent amount of services from respondent. In this case, appellant chose not to use respondent's services during the 60–day termination period because it believed that respondent's services were not of acceptable quality. But appellant declined to press its claim of breach and it is not unreasonable for the parties to agree to cover losses potentially caused by a voluntary termination of the contract.

There is nothing inherently objectionable about a contract provision that, in the event of termination, requires one party to either purchase some minimum amount of product or pay an agreed-upon fee to the other party. *See, e.g., St. Jude Med.*, 536 N.W.2d at 29 n. 5 (courts have approved "take or pay" natural gas supply contracts requiring gas customers to either "take" (purchase) minimum amount of gas or "pay" cost of gas not purchased). The parties bargained for this provision, and now appellant must abide by the terms to which it agreed.

Finally, appellant argues that the termination provision is unconscionable because it imposes the same fee regardless of the value of services exchanged, and that a $30,000 termination fee is disproportionate in this case because appellant's total billings with respondent were less than $60,000. But

the projected budget for appellant's advertising campaign was $600,000, so at the time the parties executed their agreement, the agreed-upon termination fee comprised only five percent of the amount appellant intended to spend with respondent. Viewed prospectively rather than retrospectively, the amount of the termination fee was clearly not unconscionable.

## D E C I S I O N

Parties to a contract may legitimately agree to pay a preset amount in the event of voluntary termination of that contract. The "Agency/Advertiser Agreement" between the parties in this case, which contains such a termination clause, is not ambiguous, illegal, or unconscionable.

**Affirmed.**