Glennie I. EPLAND and Dale L. Epland, her attorney in fact, Respondents,

v.

MEADE INSURANCE AGENCY ASSOCIATES, INC., et al., Respondents,

Lumbermens Mutual Casualty Company, Reserve Life Insurance Company, National Financial Insurance Company, Petitioners, Appellants.

No. C5–95–1519.

Supreme Court of Minnesota.

April 10, 1997.

Rehearing Denied May 12, 1997.

Faegre & Benson, L.L.P., John F. Beukema, Rider, Bennett, Egan & Arundel, P.L.L.P., Jeanne H. Unger, Gilmore, Aafedt, Forde, Anderson & Gray, James R. Gray, Minneapolis, for appellants.

Richard H. McGuire, James Lund, Minneapolis, for respondents.

## OPINION

GARDEBRING, Justice.

This case asks us to consider the effect of an assumption agreement between two insurance companies. An assumption agreement is an agreement that transfers the risks of one insurer to a second insurer; the second insurer assumes direct liability to the insured.[1] Specifically, the issue before us is whether the consent of the insured is necessary to effectuate such an assumption agreement between two insurance companies and what consequence, if any, results from failure to obtain that consent. We hold that such consent is necessary only to release the first insurer from liability under the insurance contract and that lack of consent does not invalidate the assumption agreement nor constitute a breach of the insurance contract.

The insureds in this case were Glennie and Bernie Epland, who are both now deceased. In 1979, the Eplands purchased from Lumbermens Mutual Casualty Company a medical insurance policy, to which certain nursing home benefits were added in 1981. The insurance contract specifically provided that the policy was guaranteed renewable for life, subject only to premium changes. In 1987, that policy was assumed by Reserve Life Insurance Company. Reserve sent a notice to the Eplands, telling them of the assumption, assuring them that their coverage remained the same, and instructing them to send their premium payments to Reserve. The notice included a statement indicating that by sending payments to Reserve, the Eplands would be consenting to release Lumbermens from any liability on the policy. The Eplands sent their premium payments to Reserve and chose to renew the policy when it came up for renewal.

In July 1990, the policy was again assumed, this time by National Financial Insurance Company. National sent a notice to the Eplands advising them of the assumption; as in the earlier case, the notice stated that there were no changes in the terms and conditions of the Eplands' policy. This time, however, after receiving this notice, the Eplands decided to seek insurance elsewhere. They contacted National to obtain a referral for an agent, and National referred them to William D. Meade. Through Meade, the Eplands began seeking new insurance and allowed their policy with National to lapse by failing to pay the premiums. They were unable to obtain replacement insurance, however, due in part to their age—they were both over 80 years old in 1990. Bernie Epland died in 1991 and Glennie Epland entered a nursing home in 1992.

Glennie Epland and her son Dale Epland brought this action against Lumbermens, Reserve, National, William Meade, and Meade Insurance Agency in 1993, generally seeking payment for Glennie Epland's nursing home

---

1. These agreements are also frequently referred to as "reinsurance," but we choose the term "assumption agreement" to be consistent with recent legislation on this subject, *see* Minn.Stat. § 60A.09, subd. 4a (1996), and to avoid confusion with more traditional notions of reinsurance. The term "reinsurance" generally refers to an indemnity agreement whereby an insurer secures itself against excessive loss upon a certain risk, with no direct benefit to the insured. *Barnes v. Hekla Fire Ins. Co.*, 56 Minn. 38, 40, 57 N.W. 314, 314 (1893); John A. Appleman and Jean Appleman, *Insurance Law and Practice*, § 7741 at 596. The type of transaction at issue in this case is different from typical reinsurance in that the risk itself is shifted to the second insurer, and the second insurer assumes direct liability to the insured. *Barnes*, 56 Minn. at 40, 57 N.W. at 314; Appleman, *supra*, § 7741 at 596–97. Assumption agreements have been recognized in Minnesota since at least 1893. *See Barnes*, 56 Minn. at 41, 57 N.W. at 314.

costs and other related damages.[2] Their complaint alleged that (1) Lumbermens and Reserve breached the insurance contract by unilaterally substituting a new party without the insureds' consent and (2) that Lumbermens, Reserve, and National misrepresented the validity of the assumption agreements. In addition, the complaint raised three statutory claims against the insurers: that Lumbermens, Reserve, and National violated the terms of a statute regulating long-term care insurance, Minn.Stat. § 62A.48 (1992); that Lumbermens, National, and Reserve committed a deceptive trade practice against senior citizens by representing that National was licensed to do business in Minnesota when it allegedly was not, Minn.Stat. § 325D.44 (1996) and Minn.Stat. § 325F.71 (1992); and that Lumbermens and Reserve violated antitrust statutes by refusing to deal with the Eplands, Minn.Stat. § 325D.53, subd. 1(3) (1996). There was also a claim against William Meade and Meade Insurance Agency, alleging that William Meade breached his fiduciary duty by counselling the Eplands not to pay the National premiums while they were seeking coverage elsewhere.

The trial court granted a motion for summary judgment in favor of Lumbermens, Reserve, and National, holding that the assumption agreements did not breach the insurance contract, that the Eplands consented to the assumption by Reserve, and that the Eplands allowed the National policy to lapse voluntarily. The court also concluded that the remaining claims were rendered moot by the lapse. Further, the trial court held that Meade was not acting as an agent for any of the insurance companies.[3]

2. Glennie Epland died in 1994.

3. The Eplands reached a settlement with William Meade and Meade Insurance Agency and subsequently dismissed all claims against them.

4. The Eplands also seem to argue that because they relied on reports of Lumbermens' strong financial status in choosing Lumbermens as their insurer, Lumbermens' financial stability became an implicit term of their insurance contract. Reserve's financial rating was slightly lower than Lumbermens', and National's was significantly lower. By transferring their policy to insurers with less financial stability, the Eplands argue,

The court of appeals reversed the trial court and held that the consent of the insureds was necessary to give effect to the assumption agreements and that the question of whether there was, in fact, consent was a question of fact for the jury. *Epland v. Meade Ins. Agency Associates, Inc.*, 545 N.W.2d 401, 407 (Minn.App.1996). If the jury were to find that there was no consent, the court held, then the Eplands would have a claim for breach of contract. *Id.* at 407–08. The court also held that the settlement with Meade had no effect on the claims against National and that whether Meade was acting as an agent for National was also a question of fact for the jury. *Id.* at 408. Finally, the court declined to address the Eplands' statutory claims because the district court did not address them and the court of appeals determined that there were disputed issues of fact relative to their resolution. *Id.* We reverse.

On appeal from summary judgment, we must ask whether there are any genuine issues of material fact and whether the lower courts erred in their application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990).

■ In their complaint, the Eplands claim that Lumbermens and Reserve breached the insurance contract by unilaterally substituting new parties to the contract without the Eplands' consent. At oral argument, counsel for the Eplands argued more specifically that the assumption agreements were a breach of the "guaranteed renewable for life" term of the contract. By delegating the duty to renew to another insurer, the Eplands assert, first Lumbermens and then Reserve failed to fulfill its duty to renew and therefore violated this term of the contract.[4] We disagree.

Lumbermens breached this implicit term of the contract.

This argument has merit only insofar as the obligation to pay a claim when made is a term of the contract, and it is expected that the party obligated to make this payment will have the financial ability to do so when the time for performance comes. Because the Eplands allowed their policy to lapse before they ever made a claim under the policy, they suffered no actual injury based on the lower financial rating of National. Had they made a claim on the policy, and had National not paid the claim because it was financially incapable of doing so, the Ep-

Insurance policies are contracts, and, unless there are statutory laws to the contrary, general principles of contract law apply. *Waseca Mut. Ins. Co. v. Noska*, 331 N.W.2d 917, 926 (Minn.1983). As a general rule, a party to a contract may assign all beneficial rights to another, without the consent of the other party to the contract.[5] 3 Williston on Contracts § 411, at 13–18 (3d ed.1960). In the absence of an express agreement to the contrary, a party may also delegate his or her duty to perform under a contract, *id.* at 20, but the original party remains liable if the performance is substantially different than performance by the original party. *Id.; see also Tony and Leo, Inc. v. U.S. Fidelity and Guar. Co.*, 281 N.W.2d 862, 865 (Minn.1979); *State v. Wood*, 173 Minn. 406, 409, 217 N.W. 360, 361 (1928). A party may not divest itself of liability on a contract without the consent of the other party to the contract. Williston, *supra*, § 411 at 19; *Tony and Leo*, 281 N.W.2d at 865. If the other party consents to the delegation of duties, thus completely substituting one party for another, the proper term for the transaction is a "novation." Williston, *supra*, § 420 at 117; *see also Tony and Leo*, 281 N.W.2d at 865.

To have an effective novation of an insurance contract, all parties must agree. *Barnes v. Hekla Fire Ins. Co.*, 56 Minn. 38, 41, 57 N.W. 314, 314 (1893). The consent to release an original party from its liability under the contract must "distinctly appear, from the express terms of the agreement, or as a necessary inference from the situation of the parties, and the special circumstances of the case * * *." *Id.* at 42, 57 N.W. at 315. Consistent with the determination of the trial court, we hold that, as a matter of law, the Eplands consented to the Lumbermens/Reserve assumption agreement by payment of premiums to Reserve, thus releasing Lumbermens from its obligation under the policy.

However, the absence of such consent does not render either of the assumption agreements at issue invalid and does not constitute a breach of the underlying insurance contract. The consent of the Eplands was necessary not to effectuate the assumption, but only to relieve the first insurer from liability on the insurance contract.[6] The policy's "lifetime renewal" obligation was not wiped out by the assumption agreement; it was merely transferred to another insurance company, with only the continuing obligation of the first insurer dependent on the consent of the other contracting party, the Eplands. *See Barnes*, 56 Minn. at 41, 57 N.W. at 314 (holding that insured who had not consented to substituted insurance arrangement could maintain action against first insurer for coverage under her insurance policy); *Maddy v. National Life Ins. Co.*, 156 Minn. 375, 379, 194 N.W. 880, 881 (1923) (holding that insured could maintain action against either insurer for coverage under policy, when novation was ineffective due to lack of consent by first insurer).

lands could then have asserted such a claim, although we make no comment on its merits.

5. Although there are some exceptions to this general rule, none of them are relevant here.

6. A similar approach has been adopted by the legislature, but only after the critical events in this case had taken place. In 1991, the legislature enacted a statute regulating assumption agreements for life insurance and recently expanded that regulation to include all types of insurance. Act of June 3, 1991, ch. 325, Art. 20, 1991 Minn. Laws 2340 (1991); Act of April 11, 1996, ch. 446, art. 1, § 2, 1996 Minn. Laws 1206 (1996). As amended, Minn.Stat. § 60A.09, subd. 4a, requires insurance companies entering into assumption agreements to file with and obtain approval from the Commissioner of Commerce. The assumption agreement must specifically provide that the original insurer remains liable to the insured in the event the assuming insurer is unable to fulfill its obligations. The assumption notice to the insured must include specific language notifying the insured that the first company remains liable on the policy:

Policyholder: Please be advised that you retain all rights with respect to your policy against your original insurer in the event the assuming insurer is unable to fulfill its obligations. In such event, your original insurer remains liable to you notwithstanding the terms of its assumption agreement.

Minn.Stat. § 60A.09, subd. 4a (1996). The first company may be released from liability only if the insured consents in a signed writing to a release of the first company, and if the insured has been "informed in writing by the insurer of the circumstances relating to and the effect of the assumption * * *." *Id.* This signed writing must also be filed and approved by the commissioner. *Id.*

Here, there was no claim that any of the three companies failed to renew the policy; indeed, the Eplands themselves allowed the policy to lapse by failing to pay the necessary premiums to National. We therefore conclude that the trial court properly granted summary judgment on the breach of contract claim.[7]

We must also consider the remaining counts in the complaint. These remaining claims are for misrepresentation, violation of the long-term care regulatory statute, deceptive trade practices, and antitrust violations. The trial court summarily dismissed these claims as "moot" because the policy had lapsed. The court of appeals reversed, finding that there were disputed issues of fact on these remaining issues. We conclude that these claims were not rendered moot by the lapse because none of them depends on the existence of a contract, but affirm their dismissal on other grounds.[8]

The Eplands' misrepresentation claims allege that the defendant insurance companies misrepresented the "fact that the parties to the contract had not been changed" and "the law of contract with respect to such modifications." Although the statement of these claims is somewhat vague, it appears that the alleged misrepresentations were, first, that Reserve, and then National, represented that it was, as a result of the assumption agreement, now the insurer under the policy, when in fact it was not; and, second, that the insurers represented that the assumption agreements were legal and valid, when in fact they were not. Because we hold that the assumption agreements were valid delegations of duties and assignments of rights, not in breach of the contract, there was simply no misrepresentation. Specifically, it was true that Reserve, and then National, were indeed the insurers under the contract, although Lumbermens and then Reserve may have also remained liable; and it was true that the assumption agreements were valid and legal. The claims as to misrepresentation must therefore fail.

The Eplands' statutory claims must also fail because they have not alleged any injuries arising from the alleged statutory violations. First, they claim that the defendant insurance companies violated Minn. Stat. § 62A.48, a regulatory statute governing long-term care policies, but do not allege that they suffered any injury as a result of the alleged violations. To have standing to bring a claim, a person must have suffered some injury in fact as a result of the alleged actions. *Snyder's Drug Stores, Inc. v. State Board of Pharmacy*, 301 Minn. 28, 32, 221 N.W.2d 162, 165 (1974). Because the Eplands have not alleged any injury, they do not have standing to bring this claim. In addition, the only remedy the Eplands seek for this claim is reinstatement of their insurance policy. There is nothing in this regulatory statute authorizing such a remedy. *See* Minn.Stat. § 62A.48. Accordingly, summary judgment was properly granted on this claim.

Secondly, the Eplands allege the defendant insurance companies committed a deceptive trade practice against senior citizens, in violation of Minn.Stat. §§ 325D.44 and 325F.71. The alleged deception was that Reserve and National, through their actions, represented that National was qualified to do business in Minnesota, when National was

---

7. The court of appeals also held that it was a question of fact for the jury whether William Meade was in fact acting as an agent of National. This issue was not raised before the court of appeals nor is it relevant to the outcome of this case. The Eplands sued William Meade, Meade Insurance Agency, and the three insurance companies, but nowhere in their complaint do they state any claims against the insurance companies that are based on the companies' vicarious liability for the actions of William Meade. The Eplands have already settled their claims with Meade and Meade Insurance Agency, and the claims against them were dismissed. While it is true that the release of Meade and Meade Insurance Agency was a *Pierringer* release, that is, it reserved the balance of the cause of action against the nonsettling defendants, *Reedon of Faribault, Inc. v. Fidelity and Guar. Ins. Underwriters, Inc.*, 418 N.W.2d 488, 490 (Minn.1988), there were no causes of action against the insurance companies arising from William Meade's actions to be preserved in this case. Thus, while William Meade's agency status remains unresolved, the resolution of that fact question is simply not relevant to the outcome of the issues before us.

8. As a general rule, we prefer not to reverse a correct decision simply because it was based on the wrong theory. *Schweich v. Ziegler, Inc.*, 463 N.W.2d 722, 728 (Minn.1990).

allegedly not qualified. Again, to have standing to sue, one must have suffered an injury. *See Snyder's,* 301 Minn. at 32, 221 N.W.2d at 165. The Eplands have not alleged any injury, nor could they. At the time they brought this claim, the Eplands were not in a position to be injured by the alleged deception because they did not own a policy issued by National: thus there was no danger that they would rely upon the alleged misrepresentation. Indeed, by the time the claim was brought in 1993, the Eplands' policy had lapsed for three years. Therefore, they do not have standing to sue for any alleged deceptive trade practice.

▆▆▆ Finally, as for the Eplands' antitrust claim, they claim that the defendant insurance companies refused to deal with the Eplands, in violation of Minn.Stat. § 325D.53, subd. 1(3). While Minnesota's antitrust statute creates a broader grant of standing than the traditional common law rule, it still requires a person to have suffered *some* injury, either direct or indirect. Minn.Stat. § 325D.57; *State by Humphrey v. Philip Morris Inc.,* 551 N.W.2d 490, 495–96 (Minn. 1996). The Eplands have not alleged *any* injury, direct or indirect, arising from the alleged antitrust violation. Accordingly, they do not have standing to raise that claim, and summary judgment was properly granted on this issue.

▆▆▆ In summary, we hold that consent of the insured is not necessary to effectuate an assumption agreement between two insurance companies. Failure to obtain consent results only in the first insurer remaining liable on the contract and does not constitute a breach of the contract. Summary judgment was therefore properly granted on the Eplands' breach of contract claim. Second, we hold that the Eplands' remaining claims for misrepresentation, for violation of statutes regulating long-term care policies, for deceptive trade practices against senior citizens, and for antitrust violations, all must fail as a matter of law and were therefore properly dismissed on summary judgment.

Reversed.