BEAM, Circuit Judge,
dissenting.
In its search for an applicable statute of limitations, I believe the court relies upon the wrong contract. Thus, I respectfully dissent.
The court is correct that Botten had a “master and servant” relationship with PrimeWood, Inc., a North Dakota corporation (PrimeWood), Minnesota Statutes Section 541.07(5), creating the “employment contract” referenced by the panel majority, ante at 980. At no time did Bot-ten have a master and servant relationship with the Shormas, especially one that generated “wages or overtime or damages,” as “remuneration for services or employment.” Minn.Stat. § 541.07(5).
PrimeWood, through Botten, its then president and COO, entered into negotiations with Woodcraft Industries, Inc., a Minnesota corporation (Woodcraft), which negotiations ultimately resulted in Woodcraft’s 1998 purchase of PrimeWood. The pathway to this destination was not unobstructed. At the time of the inter-corporate bargaining, Botten and PrimeWood had an ongoing intra-corporate dispute over bonuses and other compensation allegedly due under the Executive Bonus and Deferred Compensation Plan (Executive Compensation Plan) portion of the Primewood-Botten employment contract. It is Botten’s continuing claim for these past due payments that is the subject matter of this action. At the time of the 1998 purchase, much, if not all, of the existing claim had not expired under even a two-year statute of limitations.
Woodcraft opted not to inherit this dispute, apparently for at least three separate reasons. It wanted the sale to proceed expeditiously, it hoped to employ Botten in the merged firm, and it desired the dissolution of PrimeWood’s Executive Compensation Plan, the writing giving rise to Bot-ten’s claim. Presumably a continuing quarrel with one of its newly acquired executives over past benefits due from the recently acquired entity would have been inimical to a tranquil commencement of the combined operation.
Since Botten was to derive significant benefits from the successful combination of the firms, he also had reason to reach an amicable solution with Woodcraft and the Shormas. The Shormas sought to induce the speedy consummation of the sale because as the only shareholders of Prime-Wood, they were in line to receive most of the fruits of the corporate sale.
*982 Thus, PrimeWood, Woodcraft, Botten and the Shormas (as individuals) entered into an agreement dated June 16, 1998. Concurrently with the execution and delivery of this particular undertaking, an earlier contract for the PrimeWood purchase became final and PrimeWood became a “wholly-owned subsidiary of Woodcraft.”
The June 16 document directly affects the viability of this appeal. Under the deal, PrimeWood agreed to assign and the Shormas agreed to “assume, pay and perform ... all liabilities ... [and] obligations [of PrimeWood], if any,” under the Executive Compensation Plan with Botten. Bot-ten, in turn, agreed to absolve PrimeWood and look only to the Shormas for the satisfaction of his claim and to release Prime-Wood and Woodcraft from “any obligation ... [and] liability ... in connection with the Botten Agreement.” PrimeWood also was to dissolve the Executive Compensation Plan that gave rise to Botten’s claim.
While the court calls this PrimeWood-Shorma-Botten arrangement an “assignment agreement,” ante at 980, it was, under Minnesota law, a new contract, in part at least a novation. “ ‘A mere assignment does not absolve the [assignor’s] obligations under a contract.’ ” Vetter v. Sec. Cont'l Ins. Co., 567 N.W.2d 516, 521 (Minn.1997) (quoting Tony and Leo, Inc. v. United States Fid. & Guar. Co., 281 N.W.2d 862, 865 (Minn.1979)). “When an assignment is made, ... the assignor remains liable if ‘performance [by the assignee] is substantially different ... than performance [promised] by the original party.’ ” S O Designs USA, Inc. v. Rollerblade, Inc., 620 N.W.2d 48, 54 (Minn.App.2000) (emphasis added) (quoting Epland v. Meade Ins. Agency Assocs., Inc., 564 N.W.2d 203, 207 (Minn.1997)). “If the other party consents to the delegation of duties, thus [as here] completely substituting one party for another, the proper term for the transaction is a ‘novation.’ ” Epland, 564 N.W.2d at 207 (emphasis added). “A no-vation works to extinguish an original debt or obligation against the original debtor and shifts the debt by mutual agreement to a new party.” Ehlen v. Johnson, No. C1-97-954, 1997 WL 769534, at *3 (Minn. App. Dec.16,1997) (unpublished).
Accordingly, under Minnesota law, Bot-ten’s wage claim against PrimeWood was extinguished by the new agreement (the novation) and the Shormas, for good consideration, assumed liability in the June 16, 1998, contract for Botten’s existing claim and cause of action. While the measure of damages agreed upon in the June 16 contract may have been limited by the amount of the then existing claim for wages, the right to recover under the no-vation was a new contractual obligation. Looking to this new agreement for a statute of limitations, as we must, we discover that Botten was entitled to a six-year window of opportunity to commence his litigation. Minn.Stat. § 541.05.
I respectfully dissent.