**IN RE: POLAROID CORPORATION, et al, Debtors.**

(includes: Polaroid Holding Company; Polaroid Consumer Electronics, LLC; Polaroid Capital, LLC; Polaroid Latin America I Corporation; Polaroid Asia Pacific LLC; Polaroid International Holding LLC; Polaroid New Bedford Real Estate, LLC; Polaroid Norwood Real Estate, LLC; Polaroid Waltham Real Estate, LLC)

**JOINTLY ADMINISTERED UNDER CASE NO. 08–46617**
Court File Nos: 08–46621 (GFK)
08–46620 (GFK)
08–46623 (GFK)
08–46624 (GFK)
08–46625 (GFK)
08–46626 (GFK)
08–46627 (GFK)
08–46628 (GFK)
08–46629 (GFK)

United States Bankruptcy Court, D. Minnesota.

Signed December 30, 2013

Sarah E. Doerr, James A. Rubenstein, Moss & Barnett, James A. Lodoen, George H. Singer, Sandra S. Smalley–Fleming, Jeffrey D. Smith, Lindquist & Vennum P.L.L.P, John R. Stoebner, Lapp, Libra, Thomson, Stoebner & Pusch, Moss & Barnett, Minneapolis, MN, for Debtors.

## ORDER RE: TRUSTEE'S OBJECTION TO FILED CLAIMS OF PNY TECHNOLOGIES, INC. (CLAIMS NOS. 34 AND 188)

GREGORY F. KISHEL, CHIEF UNITED STATES BANKRUPTCY JUDGE

PNY Technologies, Inc. ("PNY") filed two proofs of claim to these consolidated cases, designating them as for the case of Debtor Polaroid Corporation. The Trustee objected to PNY's claims and the objection came before the court for hearing. Trustee John R. Stoebner appeared personally and by his attorney, Tyler D. Candee. Attorneys David J. Adler and Robert T. Kugler appeared for PNY. The following order is entered on the record made for the objection, before and during the hearing.[1]

The Debtors in these jointly-administered cases filed voluntary petitions for relief under Chapter 11 on December 18, 2008. A sale of the Debtors' major assets was approved pursuant to 11 U.S.C. § 363, and closed in May, 2009. The cases were converted to ones for liquidation under Chapter 7 on August 31, 2009.

PNY is a New Jersey-based business concern. Before the Debtors' bankruptcy filings, Debtor Polaroid Corporation and PNY were the signatory-parties to two contracts. The first, entered in 2006, was a "Brand License Agreement" ("the BLA"). Under it, the Polaroid Corporation gave PNY a license to use the distinctive Polaroid brand on specified consumer merchandise. The second, entered in 2007, was a "Support Services Agreement" ("the SSA"). Under it, the Polaroid Corporation committed to using the Polaroid enterprise's established vendor-retailer relationship with the Target Corporation to place PNY-produced consumer goods with that retailer.[2]

In 2009, PNY filed two proofs of claim in connection with these cases. The first, assigned number 34 on the clerk's claims register, was filed on February 20, 2009; the second, assigned number 188, was filed on October 5, 2009. Both recited the amount of an unsecured claim as $686,837.57; both included the same documentary attachments; and both were signed by the same individual. The second bore the addendum "already filed— not sure if needs to be resent due to the change from 11 to 7." This was the only difference in content, between the two documents. For both, PNY denoted the Polaroid Corporation's case, BKY 08–46617, as the one to which it was filing its claim.

---

1. For the record: this claim objection arises in one or more of the underlying bankruptcy cases. Hence it is within the bankruptcy jurisdiction of the federal courts. 28 U.S.C. § 1334(b). Pursuant to the general reference of 28 U.S.C. § 157(a) and Loc. R. Bankr.P. (D.Minn.) 1071–1, it is before the undersigned and it proceeds in the bankruptcy court for this district. It is a core proceeding, 28 U.S.C. § 157(b)(2)(B), and hence it is subject to entry of a final order by a bankruptcy judge, 28 U.S.C. § 157(b)(1).

2. The use of the term "the Polaroid enterprise" is deliberate. It will be a reference to the general conducting of business through any of the Debtor-corporate entities, in consort or not. Because the fixing of rights and liability as to one of two of the Debtor-entities is an issue in this claim objection, a more connotative term is used to convey the meaning that one or more of the Debtor-companies was involved, where it is not necessary or yet appropriate to specify which one.

The Trustee of the Debtors' estates under Chapter 7 objected to both claims. PNY's counsel filed a written response. A hearing was convened on the · objection. PNY's New Jersey-officed attorney appeared via telephonic means, pursuant to his request.

During the hearing, PNY's counsel raised one or more issues that were not included in his written submissions and that the parties had not even acknowledged previously. He argued that the Trustee's objection was not ready for submission and that his client needed to conduct discovery. The Trustee's attorney maintained that the objection could be addressed and ruled on as a matter of law. He argued that the dispositive issue had been properly queued up for hearing and decision on the written record. ·

After counsel were allowed to argue for as long as they needed, the matter was taken under advisement—first to consider the posture of the matter, i.e., whether the Trustee's objection was amenable to decision now as a matter of law; and then to address the merits if the Trustee was correct. Ultimately, it is appropriate to proceed as the Trustee urged. The analysis splits out into three stages. But first, some backdrop is necessary.

## I. The Origin–Point of PNY's Claim: the SSA, as it Built on the BLA

On July 19, 2006, the Polaroid Corporation and PNY, as named parties, entered a "Brand License Agreement" ("the BLA").[3] Under the BLA, PNY was granted the right to use the licensed trademarks and other items of the Polaroid Corporation's intellectual property on specified types of consumer merchandise and in connection with their sale, in specified geographic areas. PNY was to give several types of consideration for the license, including the payment of royalties. BLA, §§ 1 and 4, 1 and 4—6.[4]

On April 6, 2007, the Polaroid Corporation and PNY entered a "Support Services Agreement" ("the SSA").[5] This agreement opens with an acknowledgment that the parties were already parties to the BLA and were entering the SSA "to provide for the rights and responsibilities of each of them with regard to a specific sales opportunity involving certain PNY products bearing the Polaroid brand." SSA [Exh. A–1 to Declaration of James Dolan in support of Trustee's objection, CM/ECF pp. 27–35 of Dkt. No. 1434], 1. The SSA identifies the "specific sales opportunity" as the placement of Polaroid-branded merchandise with the Target Corporation for resale, using a preexisting and well-established relationship that the Polaroid enterprise had developed with that major retailer. *Id.*, ¶ 1(a).

Under the SSA, the signatories created a structure through which the Polaroid Corporation was a named transactional intermediary for the placement of PNY-pro-

---

**3.** In another proceeding between these parties, PNY has admitted that it was a party to the BLA and that the BLA is enforceable pursuant to its terms. Answer and Affirmative Defenses of Defendant PNY Technologies, Inc. [ADV 10–4595, Dkt. No. 12], ¶¶ 21–23.

**4.** The BLA was not put into the record for this objection, but it is referenced on p. 1 of the parties' Support Services Agreement, cited below. It is in the record for the other pend-

ing proceeding between these parties [attached as Exh. 5 to Declaration of Tyler D. Candee, ADV 10–4595, Dkt. No. 18, CM/ECF pp. 88-116.

**5.** Again, PNY admits that it was a party to the SSA and that the SSA is enforceable pursuant to its terms. Answer and Affirmative Defenses of Defendant PNY Technologies, Inc. [ADV 10–4595, Dkt. No. 12], ¶¶ 21–23.

duced and Polaroid-branded merchandise with the Target Corporation. Under the SSA, the Polaroid Corporation was to:

1. receive purchase orders from the Target Corporation for Polaroid-branded products;

2. promptly create and transmit a corresponding purchase order to PNY, for the same quantity and type of such product;

3. invoice the Target Corporation for its purchase of the goods; pp. 88–116.

4. remit the amount of Target Corporation's ensuing payment to PNY, less a one percent service fee; and

5. notify PNY promptly of any notice from the Target Corporation "as to the cancellation of any [Target Corporation] purchase order, change requests, or forecast updates that could reasonably cause PNY to incur liabilities for late charges or other penalties or costs...."

SSA, 1–2, ¶ 2.

In turn, PNY was to be:

1. "solely responsible and liable for full support of the [Target Corporation] and other warranty claims relating to the Products";

2. "solely responsible for any situations, risks, liabilities, and claims related to charge backs, price protections and discounts, marketing development fees, late or incomplete shipments, returns, recalls, consolidation fees and charges, and similar risks relating to or arising from the sale of the Products to the [Target Corporation]"; and

3. "solely responsible for all return goods, shipping charges, shipping discrepancies, or goods that are returned for any reason (including,

without limitation, so-called *'Fault Not Found'* returns)...."

SSA, ¶¶ 4(a)—(b), (d), 3 (emphasis in original).

Through its filed claims, PNY asserts rights to payment arising under the SSA. The claim asserted is for amounts that were unpaid under the SSA as of the bankruptcy filings, on account of a shipment of goods it made to the Target Corporation using the Polaroid enterprises's vendor-relationship with Target. The Debtor asserted to be liable is the Polaroid Corporation.

## II. Readiness for Adjudication on Present Record

In his original written claim objection, the Trustee specified four grounds for the disallowance of PNY's claim:

a) Claimant filed duplicate claims;

b) Claimant is not owed the amount set forth in its claims;

c) Claimant's claim, if any exists, is a claim against Debtor Polaroid Consumer Electronics, LLC, not against Polaroid Corporation; and

d) Claimant's claim, if any exists, should be disallowed under 11 U.S.C. § 502(d) unless and until Claimant pays all amounts for which it is liable to the Trustee.

Trustee's Notice of Hearing and Motion Objecting to Claims of PNY Technologies, Inc. [Dkt. No. 1434], 2 (direct quotations).

To round out those four grounds in his briefing, the Trustee pointed out the following from the relevant documents (the SSA and PNY's proofs of claim):

1. The substantive content of the two proofs of claim was identical; PNY's annotation on the later-filed one, no. 188, acknowledged that it duplicated the claim covered by no. 34.

2. The content of PNY's own proof of claim included a component of

"$575,123.97 that expressly related to 'Deductions,'" i.e., chargebacks made by the Target Corporation in connection with PNY's furnishing of goods inventory "for which [PNY] was not entitled to be paid" through the SSA under the SSA's express assignment of risk.

3. The claim should be allowed against the estate of Debtor Polaroid Consumer Electronics, LLC, and not against the estate of Debtor Polaroid Corporation, based on the parties' de facto usage via their performance under the SSA.

4. Because the Trustee had claims in suit against PNY in ADV 10–4595, any claim otherwise allowable in favor of PNY should be disallowed pursuant to 11 U.S.C. § 502(d) until PNY had fully paid any liability to the estate(s) adjudged in that adversary proceeding.

In a "preliminary response," PNY's counsel alleged that the parties were "presently working on a discovery schedule," through which PNY planned to set two depositions.[6] Nonetheless, PNY's counsel then took the following positions on the four points:

1. PNY admitted that the two proofs of claim were duplicative, and thus "PNY will agree to expunge one of the claims."

2. As to the amount of an allowable claim in favor of PNY, "factual issues are present, [and] this objection likely will need to be determined through an evidentiary hearing." No more detail than that was given. No countering evidentiary materials were produced under oath or declaration. No specific claim-compo-

nents were identified as factually-disputed.

3. By its terms, the SSA ran between PNY and the Polaroid Corporation as the sole signatories, making the Polaroid Corporation the sole party liable to PNY as a prima facie matter. The Trustee's assertion of a novation of the contract via PNY's acceptance of PCE's sole performance was not legally sustainable absent express agreement by PNY to substitute PCE as the contractually-liable party. The Trustee had not presented evidence of such an agreement. In any event, "[d]iscovery will need to be taken on this point."

4. The Trustee's suit against PNY in ADV 104595 for avoidance of allegedly-preferential transfers was still pending, actively contested, and subject to PNY's "meritorious defenses."

Though it had made several pitches for an intensive discovery process, at the end of its "preliminary" response PNY requested that the court "deny" the Trustee's objection to its claim.

The hearing on the Trustee's objection was continued once at the court's instance and was then called as rescheduled. The Trustee's counsel urged that the objection be considered on the record presented. He maintained that the issues as they really stood were not subject to factual disputes. On the merits, he argued that a claim might be allowable, but to the extent of no more than $111,713.60; and that this claim should be allowed against the estate of PCE alone, and not against the estate of the Polaroid Corporation as PNY asserted.

---

**6.** Hence, apparently, the qualification of PNY's response as "preliminary" in some way.

PNY's lawyer responded with a fluster. He first expressed surprise that the hearing might proceed to the merits rather than address status and scheduling alone and preliminarily. Then counsel segued several times to the terrain of dispute resolution, with entreaties for opportunities to conduct discovery or to engage in mediation. But that was interspersed with heavy but abstract airing of the merits and much conjecture about what the Target Corporation could have or might have done in making the $500,000.00 chargeback. There were cross-running accusations over which side had stonewalled or stalled PNY's initial efforts at discovery. And while it appeared the parties had broached the possibility of mediation, nobody had taken it further than that.

It did not look like either side was playing entirely fair with the other or with the court, on the matter of how and when their contentions were to be resolved. Too much of PNY's pitch for discovery into the Polaroid enterprise's records seemed to go to issues that it alone had responsibility for under the SSA, or to measures it would have actually taken with the Target Corporation to get a reversal of the chargebacks, had any undisclosed credit been given. On the other hand, some of the Trustee's substantive arguments were too facile; and at least one seemed too dismissive of hard-and-fast law toward a vague service of equity to the bankruptcy estates.

Ultimately, there was no warrant for PNY's "assumption" that the hearing would be treated as preliminary and directed to scheduling alone. The Trustee had not noticed it as such. There is nothing in the record to reflect that the court either considered or ordered such in advance of the hearing. On that account and others, the hearing involved an unnecessary brushfire scramble by the parties to position themselves procedurally to their best advantage on the merits. However, the parties can now be aligned on the full merits by applying two sources of authority. The first is the allocation of burdens under the law governing the allowance of claims in bankruptcy cases. The second is the sensibility of summary judgment procedure, in the way written submission of prospective evidence is examined for its probity and its sufficiency to support findings on material facts.

 In a bankruptcy case, a claim asserted by the filing of a proof of claim is deemed allowed unless a party objects. 11 U.S.C. § 502(a). "A proof of claim executed and filed in accordance with [the Federal Rules of Bankruptcy Procedure] shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). This imposes on the objector a burden of production of evidence. *In re Brown*, 82 F.3d 801, 805 (8th Cir.1996); *In re Gran*, 964 F.2d 822, 827 (8th Cir.1992). This evidence must be "substantial." *In re Brown*, 82 F.3d at 805 (quoting *In re Hemingway Transport, Inc.*, 993 F.2d 915, 925 (1st Cir.1993)). If sufficient rebutting evidence is produced, the burden of production shifts to the claimant. The claimant then must prove up its claim by a preponderance of the evidence. *In re Gran*, 964 F.2d at 827. At that point, the burden of persuasion lies on the claimant. *In re Be–Mac Transport Co., Inc.*, 83 F.3d 1020, 1025 n. 3 (8th Cir.1996); *In re Brown*, 82 F.3d at 805; *In re Gran*, 964 F.2d at 827; *In re West Tech, Ltd.*, 882 F.2d 323, 325 (8th Cir.1989).

 A contention with the allowance of a claim is made by written objection in the bankruptcy case in which the claim is filed. Fed. R. Bankr. P. 3007(a). It is brought before the court by the procedural vehicle of a motion. Loc. R. Bankr. P. (D.Minn.) 3007–1. This makes it a contested matter within the case. Fed. R. Bankr. P.

9014(a). As a contested matter, a claim objection is subject to most of the standard discovery procedures. However, a claim objection is equally subject to disposition on summary judgment under Fed. R. Civ. P. 56, *as incorporated by* Fed. R. Bankr. P. 7056. As to both, *see* Fed. R. Bankr. P. 9014(c).

In application of the principles of summary judgment, a similar allocation and shifting of burdens takes place, for the first step of the analysis: whether there is a genuine dispute of material fact as to the claim or defense at issue. Such a dispute is made out by the presence of contradictory evidence in the record that shows a triable fact issue as to one or more essential elements.[7] The party seeking summary judgment, i.e., final adjudication as a matter of law and without the taking of evidence, must first muster the collective fruits of discovery and investigation, and "point out" that it shows no genuine dispute as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Handeen v. LeMaire,* 112 F.3d 1339, 1346 (8th Cir. 1997).[8] To oppose summary adjudication on the ground of triable fact issues, the respondent must meet a shifted burden of production. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 252, 106 S.Ct. 2505; *Wood v. SatCom Marketing, LLC,* 705 F.3d 823, 829 (8th Cir.2013); *Buford v. Tremayne,* 747 F.2d 445, 447 (8th Cir.1984). The respondent must cite specific evidentiary materials in the record, Fed. R. Civ. P. 56(c)(1)(A), that could support fact-finding contrary to that proposed by the movant to make out a "genuine issue for trial."

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 256, 106 S.Ct. 2505. If it does not carry this burden, and if the governing law is satisfied by the undisputed facts proffered by the movant, the movant is entitled to summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. at 322–323, 106 S.Ct. 2548.

All of that applies under Rule 56, *if* there has been adequate time for discovery. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 250 n.5, 106 S.Ct. 2505. A respondent that believes "it cannot present facts essential to justify its opposition" has a specific procedural onus, to justify a grant of leave to take further discovery before a request for summary judgment is submitted. It must show "specified reasons" why it cannot do so, by affidavit or declaration. Fed. R. Civ. P. 56(d).

■ These authorities settle PNY's demand for an opportunity to conduct discovery, when the issues are identified in light of the contractual undertaking that gave rise to PNY's claim. In the strict context of this particular claim, on this specific contract, the Trustee's objection may be addressed and judicially resolved on the record presented so far. There is no warrant for PNY taking discovery of the bankruptcy estates before a ruling is made.

The reason is that PNY had the ability to generate enough evidence to bolster a liquidation of its claim in an amount greater than that maintained by the Trustee, through *its own means and from its own records,* if any such evidence was extant. It was incumbent on PNY to produce that evidence from its own sources first, to justify any request to take further discov-

7. As to the parts of the two-stage analysis, *see, e.g., In re Senior Cottages of America, LLC,* 438 B.R. 414, 418 (Bankr.D.Minn.2010), and *In re Fields,* 449 B.R. 387, 391 (Bankr.D.Minn. 2011).

8. The materiality of a given fact is determined by the governing substantive law, i.e., the identity of the essential elements and the linkage of particular facts to establish such elements. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

ery from the bankruptcy estates to buttress its position. The specifics are as follows; and they have everything to do with the actual functions that PNY and the Polaroid enterprise actually played under the SSA's·structure.

In pushing to do discovery, PNY's counsel suggested that additional payments may have come in from the Target Corporation to the Polaroid enterprise, after the bankruptcy filings, that were not tallied into the Trustee's presentation. He wanted to pursue that point in the records of post-petition operations that the Trustee would have inherited, and from persons who had maintained the Debtors' pre-sale business operations.

However, the notion of additional payments having been made to the Polaroid enterprise *but unknown to PNY* makes no sense, under the structure of the parties' agreement in the only way it could have been administered. One can think of at least two ways that further payments could have come in from the Target Corporation. PNY would have been involved deeply in its own right in both of them.

The first would be a further disbursement made to rectify part or all of the chargebacks itemized in the proof of claim, on some sort of corrective action that directly addressed their merits. This sort of correction is not likely to have occurred, from the very nature of most of the chargebacks, i.e., those relating to product defects or the ultimate retail price paid. These bases for chargeback just would not have been likely to be remediated, or to have generated more money for the Target Corporation from which a compensat-

ing payment would be made to the Polaroid enterprise. Once a retail customer takes advantage of a rebate or gets the benefit of a refund on a warranty claim, the customer is done with the flow of value for the purchase and the transactional line for that item of merchandise is severed. There is no logical possibility of more revenue to retailer or vendor from that past unit-sale. And ·whatever the separate chargeback category of "penalty" signified, one could not see the Target Corporation loosening the purse strings to undo its imposition

But in any case, were any remediation actually done to require new payment from the Target Corporation to the Polaroid enterprise on previously-supplied inventory, PNY and only PNY would have been involved in the events that brought about the adjustment—and *well*-involved. Under the SSA, PNY bore the full risk of all customer chargebacks.[9] Hence, PNY— *not the Polaroid enterprise*—had the onus of challenging the Target Corporation on the propriety of any chargeback. PNY would have been the one to take the measures to get an adjusting disbursement. The Polaroid enterprise would have had nothing to do with this part of the transactional sequence. It would have had no responsibility to lever any credit from the Target Corporation in correction.

Thus, the evidence of any basis for further payments from the Target Corporation would have been PNY's to produce in the first place. If it had specifics about that, it should have given them in its response to the Trustee's objection. This would have been a real basis to lever fur-

9. This of course was only fair. The chargebacks would have been made on account of goods that PNY produced and provided, or the terms of retail sales promotions PNY would have sponsored or at least known about. As the Trustee pointed out, the Polar- oid enterprise functioned largely as a conduit for the financial aspects of the provision of goods. It had nothing to do with the manufacture or transportation of the goods and thus could not be justly held responsible for their quality, condition, or conformity.

ther adjustments from the claim asserted on the proof of claim. But PNY produced nothing to show any action by the only party that could have brought about a reversal of the chargebacks—itself.

The consequence was that discovery directed to the estate(s) would have been futile, or at the very least the estates would not have been the appropriate source for the probative evidence going to the possible facts that PNY urged as material. The suggested inquiry simply would not have generated relevant evidence, or uncovered avenues toward obtaining relevant evidence. *Cf.* Fed. R. Civ. P. 26(b)(1) (scope of permissible discovery, in general).

The other possible source of adjustment would be a payment from the Target Corporation for further, post-petition shipments of merchandise from PNY, invoiced and booked pursuant to the SSA but not accounted for on the proof of claim. The same futility factor applies here.

The insinuation is that the Trustee was less than candid, or at least less than thorough, in reviewing the Debtors' post-petition operations toward fully disclosing and justifying PNY's account for a final determination and allowance of its claim. The innuendo is that the Trustee is sloppy, or is dissembling. But, in presenting the factual and legal basis for a final allowance, the Trustee and his counsel were

under the duty to certify pursuant to Rule 11,[10] plus the obligations of the Minnesota Rules of Professional Responsibility for attorneys. Further, the Trustee and his witnesses were under the penalty of perjury in presenting their declarations on the facts.

This stacking of professional obligations and mechanisms for the enforcement of veracity entitles the Trustee's submission to deference. Absent facial defect, his objection may be assumed to be the product of a fair, neutral, and thorough review, and his presentation to have shown all there was regarding PNY's claim that could be found in the Debtors' books and records. If PNY had something to controvert the Trustee's content and to challenge that assumption, i.e., evidence of its own further post-petition shipments to the Target Corporation for which it was not credited, it was PNY's burden to produce it. And to the point of the issue at bar, such evidence would have been solely in PNY's control and PNY would have been readily capable of producing it.[11]

Had PNY produced evidence of this alternate basis to offset the chargeback, it would have had an argument for conducting discovery of the Trustee and this claim objection might not have been amenable to a more summary form of adjudication.[12] But PNY did not do so. There is no

---

**10.** For bankruptcy cases, the analog to Fed. R. Civ. P. 11(b) is Fed. R. Bankr. P. 9011(b), particularly Rules 9011(b)(2)—(3).

**11.** Once again, it bears mention that the SSA's structure assigns to PNY the whole function of providing the consideration to generate the gross revenue from sales to the Target Corporation. As the Trustee's counsel points out, the Polaroid Corporation was to function solely to facilitate product placement by using its established credibility with the Target Corporation. It was to receive only a small service fee to compensate for the use of

that facility and its own administration of the invoicing and payment streams.

**12.** Bringing it back to the sense of Rule 56, sufficiently-concrete evidence of PNY's provision of further goods to the Target Corporation would have supported an inference of debt owing to it that should have been booked by the Polaroid enterprise—a "fact[ ] essential to justify its opposition" to the Trustee's claim objection. Such evidence could have merited further development by discovery into possible corresponding evidence held by the Polaroid enterprise.

demonstrated sense that discovery would produce evidence relevant to the final liquidation of PNY's claim on this possibility either.

The SSA's allocations structured things so tightly as a matter of law, that the parties' burdens for claim allowance were readily ascertained and their compliance quickly gauged. Not coincidentally, the likelihood that any claim objection could be resolved without the taking of evidence in-court was markedly increased. The SSA's risk allocation made it that clear, on the recapitulation of PNY's claim that it included in its proof of claim.

The Trustee's record gives adequate support to his legal theory as to the liability for an allowable claim in favor of PNY and its amount, without the need for discovery. PNY simply has not articulated a reason why the estates would have relevant evidence for discovery at PNY's instance, when PNY should already have the more basic and probative evidence to support its conjectured adjustments.

As it turns out, the record also permits a determination as a matter of law, as to the estate against which the claim should be allowed—though not to the outcome the Trustee urges.

Thus, treatment of this claim objection with the tools of summary judgment analysis is proper and warranted. A final determination on all aspects of PNY's claim may be made now on the record already made.

### III. Trustee's Objection, as Made

### A. Duplicative Proofs of Claim

■ As noted earlier, PNY acknowledged in its written submissions that its proofs of claim were duplicative, and it committed to withdrawing one of them to resolve that. At the hearing, its attorney promised to "withdraw or expunge the later-filed claim."

As of this date, that has not happened. Given PNY's concession, the record can be cleared without further delay. The claim asserted on the face of the later-filed proof—no. 188—will be disallowed.

### B. Allowance of PNY's Claim: Validity and Amount

■ On the substantive merits of the Trustee's claim objection, the analysis under Part II makes the job easier. PNY's proof of claim includes a page of analysis that separates the claim into two components. The first ($575,123.97) is attributed to "DEDUCTIONS," i.e., chargebacks made by the Target Corporation against the Polaroid enterprise's account for reasons linked to goods previously shipped by PNY. The other ($111,713.60) is attributed to "INVOICES." This component is itemized by several dozen line entries in varying amounts, with dates running from March 20 to July 11, 2008.

The allowability of both of these component claims can be determined on the present record, by imposing the burdens under applicable law and assessing whether the parties carried them.

For the factual aspect of his objection as to the "DEDUCTIONS"-associated component, the Trustee only had to point out the unmistakable meaning of the tags assigned to the subcomponents. These descriptors apparently were the result of PNY's own analysis in preparing its proof of claim:

DEDUCTIONS

| | |
|---|---|
| ADVERSTISEMENT-ADV [sic] | 55,000.00 |
| MISC | 3,625.00 |
| PRICE PROTECTION-PP | 150,765.30 |
| PRICE VARIANCE-PV | 15,750.00 |
| RETURN DIFFERENCE-RA | 4,174.39 |
| REBATE-REB | 166,141.00 |
| SHORT SHIPMENT-SS | 137,251.26 |
| VIOLATION-VIOL | 42,417.02 |
| | |
| TOTAL | 575,123.97 |

For a legal basis on which to object to claims on these items, the Trustee had only to cite paragraphs 4(a)—(b) and (d) of the SSA.

Of the eight categories of chargebacks itemized, only two are not directly categorized under the laundry-list of "situations, risks, liabilities, and claim" for which PNY was to be solely responsible to the Target Corporation under the SSA.[13] The two generic tags, "MISC" and "VIOLATION-VIOL" properly fall under the SSA's general rubric of "chargebacks" and "similar risks," i.e., any and every other reason on which the Target Corporation refused to make payment on an invoiced shipment.

Simply stated, these chargeback-related debts—most likely the basis for the Polaroid enterprise's reduction of earlier pass-through payments to PNY—were entirely PNY's problem when initially assessed by the Target Corporation. They remain so. Under the SSA, the Polaroid enterprise had no obligation to make PNY whole for them, absent reversal of the chargebacks and compensatory payment by the Target Corporation.

Thus the Trustee met his burden as objector, by citing right to the face of PNY's proof of claim and relying on its averments of the underlying facts. This established the larger component of PNY's filed claim as "unenforceable against the debtor and property of the debtor, under any agreement or applicable law," 11 U.S.C. § 502(b)(1); and hence the Trustee made out a prima facie case for disallowance of this component.

PNY did not produce any evidence to controvert the making of the chargebacks, their nature, or their origin in transitions for which PNY was to bear full risk and responsibility, as against the Polaroid enterprise. As a result, the Trustee's case took the field. PNY's claim must be disallowed to the extent of $575,123.97.

■ On the other hand, the Trustee failed to carry his objector's burden as to the other component of PNY's claim. The documentary support in the proof of claim for the "INVENTORIES"-related component itemizes a variety of transactions, several dozen in number. The only logical

13. Specifically, "ADVERSTISEMENT–ADV" falls under "marketing development fees"; "PRICE PROTECTION–PP, PRICE VARI-ANCE–PV, and REBATE–REB" fall under "price protections and discounts"; "RE-

TURN DIFFERENCE–RA" falls under "returns" or "return goods"; and "SHORT SHIPMENT–SS" obviously falls under "incomplete shipment."

inference [14] is that these recapitulate PNY's individual shipments of inventory over a period of three-plus months in mid–2008. The inferential thrust is that this was a last round of inventory provision to the Target Corporation under the SSA, left unsubmitted to the Polaroid enterprise or at least unpaid by it as its cash flow rapidly foundered in the summer of 2008.[15]

This content of the proof of claim makes out a prima facie case for this component-about as well as any vendor evidences one in a commercial case. It is entitled to that weight, as given by Rule 3001(f).

The burden of production was shifted, then, to the Trustee. He and his attorney did nothing to rebut PNY's prima facie showing, or to controvert the bona fides of this component claim. At one point the Trustee's counsel referred in passing to the prospect that PNY *might* gain an allowed claim for this component *once* it separately proved up a basis for a Debtor's liability. The notion behind that remark was simply wrong, given the Trustee's failure to carry his burden as objector.

PNY is entitled to an allowed claim for this component, $111,713.60, which will have the status of a general unsecured pre-petition claim.

## C. Estate Against Which Claim is to be Allowed

■ As his other substantive theory of objection, the Trustee sought a determination that PNY's claim was allowed against the estate of PCE alone. This outcome would fly in the face of the SSA, to which the Polaroid Corporation was the sole signatory on the side of the Polaroid enterprise, and hence the sole party liable as a strict matter of contract.

The Trustee seeks to get across that by urging that PNY and the Polaroid enterprise brought about a novation of the SSA through their performance. The point is not established (or even addressed) in the record, but it appears (or at least the parties assume) that PCE was the party in contractual privity with the Target Corporation. The record would support a finding that PCE was the sole entity on the Polaroid side to actually invoice and purchase-order for the placement of PNY-produced goods with the Target Corporation, and to accept and make payments under the SSA.[16] Under the Trustee's argument, this pattern of performance, persisting without objection from PNY, worked a novation of the SSA, through which PCE assumed the duties as signatory from the Polaroid Corporation and the Polaroid Corporation was released of its liability.[17]

**14.** And one that is not disputed by the Trustee.

**15.** No, there is no evidence of the last observation in the present record. It is made from five years' worth of presiding over these cases and their group of related cases, *In re Petters Company, Inc.*, BKY 0845257, and hard-gained familiarity with the operational history that led to the bankruptcy filings.

**16.** The "POLAROID SUMMARY SHEET," a recap of unknown origin submitted as an attachment to PNY's proofs of claim, repeatedly notes "POLAROID CONSUMER ELE LLC" in the second column for its dozens of line-entries for inventory-based transactions that are asserted to have given rise to PNY's claim.

**17.** The legal framework and cited authority for the novation argument were not submitted to support this claim objection; but they were put into the record for pending cross-motions for summary judgment in the related adversary proceeding between these parties, ADV 10–4595. The theory of novation was developed at length there to counter PNY's argument that it was entitled to an offset in the amount of its allowed claim in the bankruptcy case(s), against any judgment that the Trustee received in favor of the Polaroid Corporation's estate on account of unpaid royalties under the BLA. Plaintiff's Reply Memorandum of Law in Support of Motion for Partial Summary Judgment [ADV 10–4595, Dkt. No. 23], 8–12.

For the proposition that a party's delegation of contractual duties to a third party can work a novation that substitutes the third party as contractually-liable, the Trustee relies principally on *Epland v. Meade Ins. Agency Assocs., Inc.*, 564 N.W.2d 203 (Minn.1997). He acknowledges that *Epland* limits such a novation to situations where "the other party consents to the delegation, thus completely substituting one party for another." However, he maintains that such consent may be either express, or found by "necessary inference from the situation of the parties, and the special circumstances of the case." 564 N.W.2d at 207.

To support such an inference, the Trustee produces one negotiated check, plus multiple purchase orders, invoices, and e-mail communications for transactions between the Polaroid enterprise and PNY under the SSA. All of these were apparently founded on a pre-inception directive from the Polaroid enterprise to PNY, to "use Polaroid Consumer Electronics, LLC in MN," for all billing and documentation.[18] All of them identify PCE as the entity with which PNY was dealing, de facto.[19]

▮▮▮▮ None of this compels the inference of consent, however. It does not even support it, under longstanding Minnesota case law precedent. For a novation in substitution of parties to be effective, the consent must be explicitly expressed and it must be on the part of *all* parties, those originally signatory to the contract and the party to be substituted-in. *Hanson v. Nelson*, 82 Minn. 220, 84 N.W. 742, 743 (1901).[20] The consent must go both to the release of the original party

and to the assumption by the substituted party. *Cornwell v. Megins*, 39 Minn. 407, 40 N.W. 610, 611 (1888). *See also State v. Wood*, 173 Minn. 406, 217 N.W. 360, 361 (1928). *Epland* upheld a finding of consent on the part of an insured to substitute a new insurer for an original one on an existing policy, and hence a novation releasing the original insurer from its duties. But the *Epland* court relied heavily on the fact that the assuming insurer had issued a notice to the insured, stating that payment of further premiums to the assuming insurer would extinguish the duties and liability of the original insurer. The insured had responded by sending payments to the assuming insurer. 564 N.W.2d at 207.

There is no comparable evidence here. The Trustee has presented no evidence, direct or circumstantial, to indicate that PNY ever consented to substitute PCE for the Polaroid Corporation, as the intermediary under the SSA that would be contractually-liable to PNY for net payments from the Target Corporation on its provision of merchandise inventory. It is not irrelevant (and the Trustee is correct) that PNY went ahead to take the benefit of PCE's de facto performance of the SSA notwithstanding the absence of the Polaroid Corporation from the documented transactional flow. But there is no evidence to indicate that before contracting, PNY and the Polaroid Corporation contemplated that happening de facto because PCE was the one with the Target connection, contractually or informally. And more to the point, there is no evidence that PNY ever accepted PCE as *a* party to

18. E-mail message from Bradford J. Kullberg to Heidi Sloto, p. 2 of Exh. B to Declaration of James Dolan in support of Trustee's claim objection.

19. This is the evidence that could support a finding, if one had to be made.

20. The *Epland* court stated this for its context: "To have an effective novation of an insurance contract, all parties must agree." 564 N.W.2d at 207.

be legally liable to it, let alone as the *sole* party in substitution for the Polaroid Corporation.[21]

PNY's facial assertion of this claim against the Polaroid Corporation's estate has an objective basis on the face of the SSA. The SSA's terms alone made out a prima facie case for the allowance of the claim against the Polaroid Corporation's estate, and that of no other of the Debtors. The Trustee's submissions do not carry his burden as objector, to rebut that contractual assignment of liability. They could not support a finding of actual consent for a substitution-by-novation.

Thus, the Trustee's objection must be overruled to that extent. PNY's claim will remain allowed against the estate of the Polaroid Corporation.

### D. Disallowance Pursuant to 11 U.S.C. § 502(d)

■ Finally, the Trustee seeks to have PNY's claim disallowed on a more general, administratively-minded basis, 11 U.S.C. § 502(d):

> Notwithstanding [11 U.S.C. § 502(a)—(b) ], the court shall disallow any claim of any entity from which property is recoverable under [11 U.S.C. §§ ] 542, 543, 550, or 553 . . . or that is a transferee of a transfer avoidable under [11 U.S.C. §§ ] 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) . . . unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under [11 U.S.C. §§ ] 522(i), 542, 543, 550, or 553 . . . .

The Trustee notes that he and PNY are embroiled in litigation he commenced, ADV 10–4595. In that action, the Trustee seeks to avoid pre-petition payments made to PNY pursuant to the SSA on the ground that they were preferential (11 U.S.C. § 547(b)), and to obtain a judgment of more than $470,000.00 against PNY on a claim for unpaid royalties under the BLA. Cross-motions for partial summary judgment are pending in that adversary proceeding and will be addressed in short order.[22]

The Trustee asserts a right to have PNY's claim disallowed *now*, with the disallowance to persist "unless and until [PNY] pays all amounts for which it is liable to the Trustee" in ADV 10–4595.

This request is premature. It will be premature until a judgment is entered against PNY in the adversary proceeding. *In re Odom Antennas, Inc.*, 340 F.3d 705, 708 (8th Cir.2003). *See also In re Midwest Agri Dev. Corp.*, 387 B.R. 580, 586 (8th Cir. BAP2008). If the Trustee recovers a judgment against PNY, and PNY does not readily satisfy it, he may renew his objection as to any unapplied and unsatisfied

21. There are several possible reasons why the Polaroid Corporation was the named signatory, though PCE apparently had the established relationship with the Target Corporation. Mere sloppiness or imprecision is one. PNY's later acceptance of all placement and all payments through PCE as a vehicle may have only reflected the mentality of taking what kept working, the formalities be damned, in the fashion all too common among fast-acting business people. But just as possible is the benefit to PNY of binding the larger, more prominent, and centrally-functioning entity in the Polaroid enterprise, the Polaroid Corporation, to legal liability for the consider-

able value that PNY was putting into the inventory placed with Target. On the face of the SSA, that is what PNY contracted for, and thus the benefit it would keep absent its consent. And without an objective indication of that consent, the actual transactional flow in performance by the Polaroid enterprise has no legal relevance to the continuing repose of liability.

22. A determination on the Trustee's claim objection was a prerequisite for a full disposition of those motions.

claim at that time.[23] Or (more appropriately), the issue can be addressed in ADV 10–4595 itself; the Trustee seeks disallowance pursuant to § 502(d) in Count Three of his complaint there.

## ORDER

On this memorandum of decision,

IT IS HEREBY ORDERED:

1. The claim asserted by PNY Technologies, Inc. under claim no. 188 is disallowed in its entirety, as duplicative.

2. Under claim no. 34, PNY Technologies, Inc. is allowed a general unsecured pre-petition claim in the amount of $111,713.60. The balance of the claim asserted under claim no. 34 is disallowed on its merits, pursuant to 11 U.S.C. § 502(b)(1).

3. The claim allowed under Term 2 is allowed in the case, and against the estate, of Debtor Polaroid Corporation, BKY 08–46617, and not in the case or against the estate of any other of the Debtors in this jointly-administered grouping.

4. The Trustee's request that the claim allowed under Term 2 be disallowed pursuant to 11 U.S.C. § 502(d) is denied as premature, pending the fixing and liquidation in ADV 10–4595 of the claimant's liability, if any, to the bankruptcy estate of the Polaroid Corporation.

23. In ADV 10–4595, PNY has asserted setoff and recoupment as defenses to the Trustee's action on unpaid royalties. If that argument prevails, PNY's claim against the bankruptcy estate will be extinguished by a corresponding abatement of its judgment-evidenced liability.